**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 18, 2012**

# In the Court of Appeals of Georgia

A12A0626. ASHLEY v. THE STATE.

PHIPPS, Presiding Judge.

Homer Ashley was tried by a jury and convicted of two counts of distribution of dihydrocodeinone, in violation of the Georgia Controlled Substances Act. He appeals, contending that the drugs were improperly admitted into evidence because the chain of custody was not proved, the chemist who analyzed the drugs should not have been qualified as an expert witness, and the evidence was insufficient. For the reasons that follow, we affirm.

The evidence showed that Sergeant Christopher Brewer with the Laurens County Sheriff's Department met with a confidential informant who had stated that she could purchase narcotics from Ashley. On January 21, 2010, Sergeant Brewer and Corporal Van Payne, also with the sheriff's department, met with the informant to

attempt to purchase from Ashley dihydrocodeinone, or "what's commonly referred to as Lortabs." The informant, whose driver's license had been suspended, was driven around by another individual. Before sending the informant to purchase the narcotics, Corporal Payne searched the vehicle, and Sergeant Brewer searched the informant and the driver to make sure no drugs or money were present. Sergeant Brewer then provided the informant with $140 in official funds, an audio and video recording device, and an audio transmitting device (so that he could listen to conversations as they occurred).

The driver drove the informant to the location where the sale was to take place, and Sergeant Brewer followed. Sergeant Brewer observed Ashley enter the informant's vehicle and heard the conversation which ensued. The informant testified at trial that she had purchased 20 Lortab pills from Ashley that day. After the transaction, Sergeant Brewer met the informant (and the driver) at a pre-arranged location, and the informant gave Sergeant Brewer pills which later tested positive for dihydrocodeinone. The informant also gave to Sergeant Brewer a piece of mail addressed to Ashley, which the informant had obtained from a bag Ashley carried during the transaction.

On March 10, 2010, Sergeant Brewer met with a different confidential informant who stated that he could purchase narcotics from Ashley. Before the informant was sent to purchase the narcotics, the informant and his vehicle were searched. The informant was then provided with $50 in official funds, an audio and video recording device, and an audio transmitting device. The informant went to the location where the sale was to take place. Sergeant Brewer followed the informant, observed from a distance the informant's contact with Ashley, and heard their conversation which accompanied the transaction. After the transaction, the informant and his vehicle were searched, and the informant gave Sergeant Brewer pills, which later tested positive for dihydrocodeinone. At trial, the informant and Sergeant Brewer identified the pills which the informant had purchased from Ashley that day.

Sergeant Brewer testified that prior to trial, he had reviewed the audio and video recordings of the January and March transactions and they accurately depicted the events that had occurred. The informant from the January transaction described the events as the audio and video recordings were being played for the jury, and the informant from the March transaction verified that the video recording, which was played for the jury, accurately depicted the events that occurred during his transaction with Ashley.

1. Ashley contends that the drugs were improperly admitted into evidence because the state "failed to prove chain of custody . . . because there was no eyewitness testimony concerning what happened to the bags and pills when the pills were allegedly tested the first time before being shipped back to the Sheriff's Office."

> Where the State seeks to introduce evidence of a fungible nature, it must show a chain of custody adequate to preserve the identity of the evidence. The burden is on the State to show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not negative every possibility of tampering, and need only establish reasonable assurance of the identity of the evidence. When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight.[1]

The lack of testimony by a crime lab employee who originally receives drugs does not, in all circumstances, break the chain of custody.[2] "Absent affirmative evidence

---

[1] *Hurst v. State*, 285 Ga. 294, 296 (2) (676 SE2d 165) (2009) (citations and punctuation omitted).

[2] *Johnson v. State*, 271 Ga. 375, 382 (13) (519 SE2d 221) (1999), citing *Givens v. State*, 214 Ga. App. 774 (2) (449 SE2d 149) (1994).

of tampering, mere speculative doubt as to the handling of evidence while in the possession of the Georgia Crime Lab is a matter for consideration by the jury."[3]

Here, the evidence showed that the drugs were tested by the Georgia crime lab, returned to the arresting police agency, and then sent back to the crime lab for retesting when the initial chemist who tested the drugs was unavailable to testify as to those results because the chemist was no longer employed by the crime lab. A second chemist retested the drugs prior to trial, and she testified as to the results she obtained. Notably, Ashley does not contend that tampering occurred or may have occurred between the time the drugs were returned to the police agency after initial testing and the time the drugs were sent back to the crime lab for retesting. He specifically argues the possibility that tampering occurred when the initial chemist handled the drugs.

But Ashley presented no evidence of tampering, only mere speculation that because the initial handling of the drugs at the crime lab was unknown, tampering could have occurred. The state met its burden of showing with reasonable certainty that the evidence was the same as that seized and that no tampering or alteration

---

[3] *Johnson*, supra.

occurred. Accordingly, the trial court did not err in admitting the drugs on this ground.[4]

2. Ashley contends the chemist who analyzed the drugs should not have been qualified as an expert witness due to her lack of experience. Ashley points out that the chemist had been working at the crime lab for only 14 months, did not have a doctorate degree, and had tested fewer lab samples in 14 months than the "average person" at the crime lab had tested in a single year.

> An expert witness is anyone who, through training, education, skill, or experience, has peculiar knowledge that the average juror would not possess as to any question of science, skill, trade, or like questions; the expert witness may render an expert opinion within the witness' area of expertise after the qualifications have been proven to the trial court. It is for the trial court to determine, as a matter of law after hearing evidence, whether a witness is competent by way of qualifications to render an opinion within [her] area of expertise. The requirements for qualification as an expert witness are minimal; generally, nothing more is required to qualify an expert than evidence that the person has been educated in a particular trade, science, or profession. Formal education or training in an area of expertise is not necessary, provided the witness possesses the qualifications of such area of expertise through skill and experience. It is the possession of special knowledge derived either from experience, study, or both in a field of expertise that makes one an expert. Thus, an

---

[4] See id.

expert witness can express an opinion on a matter which comes within the person's qualifications. The possession of a license in Georgia does not go to qualification as an expert witness but may go to the weight and credibility that a jury gives to such expert's opinion.[5]

The trial court's ruling on this issue is reviewed only for abuse of discretion.[6]

In this case, the chemist was qualified by education, training, and experience and was properly accepted as an expert in the area of forensic chemistry by the trial court when tendered as an expert witness. The chemist testified that she had earned an associate degree in science, a professional degree in chemistry, and had begun work on a Master's degree in science education. When asked how much laboratory experience she had, the chemist testified that in obtaining her professional degree she spent "the entire time" in the lab. The Georgia Bureau of Investigation had provided the chemist with 12 months of training, which included lab procedures, during which she tested approximately 800 samples. Prior to this trial, the chemist had been tendered in a drug case as an expert in the area of chemical analysis.

---

[5] *In the Interest of C. W. D.*, 232 Ga. App. 200, 206-207 (3) (a) (501 SE2d 232) (1998) (citations and punctuation omitted).

[6] *Thomas v. State*, _ Ga. _ (_SE_) (5) (Case No. S11A1686, decided March 5, 2012).

After being accepted as an expert by the trial court, the chemist testified about the procedures and tests she had used to determine the identity of the pills submitted in evidence in this case. The chemist was subjected to cross-examination by Ashley regarding the procedures and tests, and Ashley did not present evidence that the procedures or tests were outside the range of the chemist's education, training and experience.

Because the evidence showed that the witness possessed the requirements necessary to qualify her as an expert, we find no abuse of discretion.[7]

3. Ashley contends that the evidence was insufficient to support his conviction because the chain of custody of the drugs was not proved, the chemist was not qualified to identify the drugs, and his identity was not proved beyond a reasonable doubt.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could

---

[7] See id.

have found the essential elements of the crime beyond a reasonable doubt."[8] The trier of fact, not this court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts.[9]

(a) For the reasons stated in Divisions 1 and 2,[10] Ashley's contentions that the evidence was insufficient because the chain of custody of the drugs was not proved and the chemist was not qualified to identify the drugs, are without merit.

(b) Ashley's further contention, that the evidence was insufficient because his identity was not proved beyond a reasonable doubt, is also without merit. Ashley argues that the state's case hinged on: the testimony of informants, who had criminal convictions and were admitted drug addicts ; a video recording, which did not depict his image ; and testimony by a law enforcement officer whose ability to see the transactions was possibly compromised.

As we have held, "[t]he determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury.

---

[8] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original).

[9] Id. at 318-319 (III) (B).

[10] Supra.

This Court neither weighs the evidence nor determines witness credibility. The jury resolves any conflicts in the evidence."[11] We "only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[12] Further, "[t]he testimony of a single witness is generally sufficient to establish a fact."[13] Under these standards, the state adduced evidence sufficient to show identity and to support the jury's finding of Ashley's guilt beyond a reasonable doubt of two counts of distribution of dihydrocodeinone, in violation of the Georgia Controlled Substances Act. Therefore, we affirm the convictions.[14]

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[11] *Vasquez v. State*, 275 Ga. App. 548, 549 (621 SE2d 764) (2005) (citations and punctuation omitted).

[12] *Culpepper v. State*, 302 Ga. App. 370, 373 (2) (690 SE2d 864) (2010) (footnote omitted).

[13] OCGA § 24-4-8.

[14] See *Vasquez*, supra; *Culpepper*, supra.