## S05A1041. WILLIAMS v. THE STATE.

(620 SE2d 816)

HUNSTEIN, Presiding Justice.

Appellant Calvin Williams was found guilty of the malice murders of Ponda Davis, Lisa Bymon, and Bymon's two children. He was sentenced to four consecutive terms of life in prison without parole.[1] He appeals, and for the reasons that follow, we affirm his convictions.

1. The evidence at trial authorized the jury to find that appellant, a married Ludowici police officer, had an affair with Bymon. Just prior to the murders, Bymon ended the relationship. Witnesses testified that appellant had made prior threats against Bymon, that he was very jealous and obsessive about their relationship, and that he had been stalking Bymon. On the night of the murders, a neighbor heard screaming from Davis's residence and observed someone running from the home. The next day, police officers discovered four dead bodies in the rear bedroom of the home. Twenty-eight-year-old Davis had been stabbed forty-two times; twenty-six-year-old Lisa Bymon had been shot in the head through the ear and her throat had been cut; and Bymon's two children, Desiree, age seven, and Juwan, age six, had been stabbed multiple times.

A blood trail found in the residence led investigators to conclude that the perpetrator had a pre-existing leg or foot injury. While interviewing appellant, investigators observed fresh bruises and cuts on appellant's hand for which he had no plausible explanation and confirmed that appellant had recently injured his right ankle and was wearing a "walking boot." They also learned that he no longer had possession of his service revolver, which was the same caliber weapon used to kill Bymon. Expert testimony revealed the presence of appellant's blood at several locations within the crime scene, including the bedroom where the victims' bodies were found, despite appellant's assertion that he had never been in the Davis residence. A bloody shoe print matching the shoe prints at the scene of the crime was found in appellant's garage.

Viewed in the light most favorable to the verdict, we conclude the evidence was sufficient to enable any rational trier of fact to find

---

[1] Williams was indicted on November 15, 2000 on four counts of malice murder. The State announced its intention to seek the death penalty on November 16, 2000 and amended its notice of intent on May 3, 2001. The trial court granted Williams' motion to change venue on October 30, 2001 and transferred the case to the Bibb County Superior Court on December 5, 2001. Williams was tried before a jury on December 10-14, 2001. On December 14, 2001, the jury found Williams guilty on each count of the indictment, and he was sentenced to four consecutive terms of life imprisonment without parole. Williams filed a motion for new trial on January 12, 2002, which was denied on December 15, 2003. A notice of appeal was filed on January 13, 2004. The appeal was docketed in this Court on March 15, 2005, and the case was submitted for decision on the briefs.

appellant guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that the trial court erred in qualifying Thomas Cribbs, a major with the Hinesville Police Department, as an expert in the area of blood pattern analysis. "To qualify as an expert . . . generally all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study. [Cits.] Formal education in the subject at hand is not a prerequisite for expert status." *Bowden v. State*, 239 Ga. 821, 826 (3) (238 SE2d 905) (1977). The trial court has broad discretion in accepting or rejecting the qualifications of the expert, and its judgment will not be disturbed on appeal absent an abuse of discretion. *Brown v. State*, 245 Ga. 588, 589 (266 SE2d 198) (1980).

The State presented evidence that Major Cribbs had been in law enforcement for over 33 years. He had received FBI and GBI training in investigation and crime scene evaluation, had attended numerous courses in crime scene reconstruction, including instruction on blood pattern analysis and characteristics of blood patterns, and over the course of his career had investigated hundreds of bloody crime scenes. At the time of trial, Cribbs was in charge of the investigation division of the Hinesville Police Department, where he was involved in crime scene investigations and personally oversaw the work of seven other investigators. From this evidence, we find no abuse of discretion in the trial court's determination that Cribbs was a qualified expert in the area of blood pattern analysis.

3. Appellant's claim that the trial court erred in admitting the similar transaction testimony of Teresa Coleman is waived because appellant failed to object to the testimony at the time it was introduced at trial. *Smith v. State*, 268 Ga. 42 (3) (485 SE2d 189) (1997). We additionally note that the trial court did not err in admitting this evidence. The trial court conducted a hearing pursuant to Uniform Superior Court Rule 31.3 (B) at which Coleman testified that approximately three years before the murders she had had an extramarital affair with appellant and when she attempted to end the relationship appellant became obsessive and abusive. Coleman's testimony was properly offered to show intent, motive, and bent of mind. See *Williams v. State*, 261 Ga. 640 (2) (b) (409 SE2d 649) (1991).

4. Nor did the trial court err by failing to give a more narrowly-tailored similar transaction charge where such an instruction was not requested. See *Sedlak v. State*, 275 Ga. 746 (2) (e) (571 SE2d 721) (2002); *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998). Moreover, our review of the record indicates that both after the admission of the similar transaction evidence and in its final charge to the jury the trial court gave complete and accurate instructions on the use of

similar transaction evidence and on the limited purposes for which such evidence could be used. Contrary to appellant's argument, the State was not required to identify a single purpose for which the evidence was offered but correctly offered it for the multiple purposes of proving motive, bent of mind, and intent.

5. The trial court admitted the testimony of several witnesses concerning prior difficulties between Bymon and appellant under the necessity exception to the rule excluding hearsay. OCGA § 24-3-1 (b). For hearsay to be admitted under the necessity exception, it must be established that the testimony is necessary and that it has particular guarantees of trustworthiness. *Chapel v. State*, 270 Ga. 151 (4) (510 SE2d 802) (1998). Appellant contends that the testimony of three of these witnesses, Naomi Henderson, Lamarkus Adams, and Officer James Snider, lacked the indicia of reliability required to satisfy the particularized guarantees of trustworthiness prong. As discussed below, we find no reversible error in the admission of this testimony.

(a) Naomi Henderson was Bymon's co-worker and friend. She had known Bymon for a year and a half and the two women regularly confided in each other about personal matters. Henderson testified that on the night of the murders Bymon told her she had broken up with appellant and that she was going to Davis's house to cook dinner. Similarly, Lamarkus Adams was a close friend of Bymon who visited with her almost every day in the year preceding Bymon's death. Adams testified that he and Bymon regularly discussed personal problems and gave each other advice. He also testified that two days before her death, Bymon stated she had told appellant to "get lost" and that appellant responded that it was not going to be that easy to get rid of him. Bymon's statements to both Henderson and Adams were uncontradicted statements made to individuals whom she had known for over a year, in whom she placed great confidence and to whom she regularly turned for advice with her personal problems and to discuss personal matters. Accordingly, the trial court was authorized to find that Bymon's statements to these witnesses contained particularized guarantees of trustworthiness. See *Watson v. State*, 278 Ga. 763 (2) (a) (604 SE2d 804) (2004); *Ward v. State*, 271 Ga. 648 (2) (520 SE2d 205) (1999).

(b) Officer Snider met Bymon approximately a year before her death when she sought police assistance in removing appellant from her residence. Snider accompanied Bymon to her residence where he met appellant. There, Bymon told Snider that appellant believed she recently had been with another man and that he forced his hand in her undergarments and digitally penetrated her in order to determine whether she had engaged in sexual intercourse. An official report was prepared, but no charges were filed. Following this incident, Snider and Bymon talked occasionally up until the time of

her death. Snider testified that Bymon would either call him or they would run into each other in public places and talk. On these occasions, they discussed various topics, including, in some detail, her relationship with appellant. Snider felt Bymon needed to talk to someone about the relationship, and she regularly confided in him. Bymon told Snider that appellant had become more abusive over time and that she no longer cared for him because of the abuse. She recounted that on one occasion appellant knocked her to the ground, held an iron to her face, and told her that if he could not be with her he would make it so no other man would want to be with her. One week before her death, Bymon told Snider that she had broken up with appellant and that she was dating someone new.

Statements made by Bymon during the initial domestic dispute were made or repeated in the presence of appellant and appellant thereafter admitted the allegations to Snider, although he contended that he acted with Bymon's consent. Even assuming that these statements were made during a police investigation and are "testimonial" under *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), the hearsay portion of Snider's testimony regarding this incident was cumulative of other properly admitted evidence and did not go to the core issue in this case. See *Watson*, supra, 278 Ga. at 767 (2) (b). Thus, even if erroneous, the admission into evidence of that portion of Snider's testimony was harmless error. See *Bell v. State*, 278 Ga. 69 (3) (597 SE2d 350) (2004); *Moody v. State*, 277 Ga. 676 (4) (594 SE2d 350) (2004).

The remaining statements were made to Snider not in the course of an investigation but during social conversations between Bymon and Snider. While the infrequency of conversations may make admissibility of such evidence a much closer question, under the totality of the circumstances in this case, we find the trial court did not abuse its discretion in finding sufficient guarantees of trustworthiness. See *Campos v. State*, 273 Ga. 119 (2) (538 SE2d 447) (2000) (court considers totality of circumstances in deciding whether sufficient guarantees of trustworthiness are present; that decision is reviewed under abuse of discretion standard). Snider's testimony shows that Bymon sought him out, placed great confidence in him and talked to him about her personal problems. There is nothing to indicate that these statements were either recanted or contradicted by Bymon during her lifetime. " 'Uncontradicted statements made to one in whom the deceased declarant placed great confidence and to whom she turned for help with her problems are admissible under the necessity exception.' [Cit.]" *McCoy v. State*, 273 Ga. 568 (4) (544 SE2d 709) (2001).

6. We agree with appellant that the trial court erred when it refused, during the penalty phase, to allow him to try on a police

uniform discovered in Bymon's home. See *Barnes v. State*, 269 Ga. 345 (496 SE2d 674) (1998); *Blankenship v. State*, 251 Ga. 621, 624 (308 SE2d 369) (1983) (evidence of defendant's guilt or innocence cannot be excluded in penalty phase, even though guilty verdict was rendered in guilt/innocence phase). We conclude, however, that due to the limited nature and relevance of this mitigating evidence, the overwhelming evidence of appellant's guilt and the fact that the jury rejected the death sentence and sentenced appellant to life without parole, that the error was harmless. See generally *Riley v. State*, 278 Ga. 677 (4) (604 SE2d 488) (2004) (alleged error in excluding testimony in penalty phase was harmless in light of the evidence).

*Judgment affirmed. All the Justices concur, except Benham, J., who concurs in Divisions 1, 2, 3, 4, 5 (a), 6 and in the judgment.*

DECIDED OCTOBER 11, 2005.

*Garland, Samuel & Loeb, Donald F. Samuel, William C. Lea*, for appellant.

*Tom Durden, District Attorney, Lewis M. Groover, Jr., Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Chad E. Jacobs, Assistant Attorney General*, for appellee.