S11A1686. THOMAS v. THE STATE.
(723 SE2d 885)

NAHMIAS, Justice.

Appellant Clifton Thomas challenges his convictions of numerous crimes, including malice murder, armed robbery, and aggravated assault, committed at two different convenience stores in Athens, Georgia, on the same night.[1] Finding no merit to his contentions, we affirm.

1. The evidence presented at trial, viewed in the light most favorable to the verdict, showed the following. Shortly after 3:30 a.m. on December 5, 2007, the police responded to a shooting at a convenience store in Athens. They discovered the store clerk, Djamal Atroune, lying on the floor, bleeding heavily from a gunshot wound to his back. Paramedics took the victim to the hospital, where he was

---

[1] The crimes occurred on December 5, 2007. On April 23, 2008, Appellant was indicted on 28 counts. For crimes occurring at the first convenience store that was robbed that night, Appellant was charged with the malice murder of Djamal Atroune; five counts of the felony murder of Atroune; armed robbery; burglary; aggravated assault; two counts of possession of a firearm by a convicted felon; and nine counts of possession of a firearm during the commission of a crime. For crimes occurring later that night at the second convenience store, Appellant was charged with armed robbery; burglary; aggravated assault of Daphne Brown; two counts of possession of a firearm by a convicted felon; and three counts of possession of a firearm during the commission of a crime. Before trial, the State nol prossed four counts of the indictment. On April 3, 2009, a jury found Appellant guilty on the remaining counts. On April 6, 2009, the trial court sentenced Appellant to two consecutive sentences of life without parole for the malice murder and armed robbery (at the second store) convictions and to consecutive terms of years on other convictions. The felony murder convictions were vacated as a matter of law, and the trial court merged certain other convictions for sentencing purposes. On April 9, 2009, Appellant filed a motion for new trial, which he amended on November 29, 2010. On December 8, 2010, the trial court denied the motion for new trial, as amended, and Appellant filed a timely notice of appeal. The case was docketed for the September 2011 term of this Court and submitted for decision on the briefs.

pronounced dead. Daphne Brown, who worked at another convenience store in Athens, was robbed at gunpoint around 4:00 a.m. on the same night. Eyewitness descriptions, as well as video surveillance tapes from the two stores, indicated that the perpetrator at both stores was a man of similar size wearing similar clothing, including a dark-colored hoodie and jeans and a thin black mask covering his nose and mouth. Brown provided information for a sketch of the robber and at trial identified Appellant as the robber, explaining that even though he wore a wave cap and a thin mask, she got a good look at his eyes and could see the shape of his nose and lips.

On the night of the crimes, Appellant was with two cousins and a friend until about 2:30 a.m. He was wearing a dark hoodie and jeans. Shortly before 2:30 a.m., the four had stopped at a convenience store just outside Athens. One of Appellant's cousins and his friend identified Appellant in still photographs taken from that store's video surveillance system, which showed that the clothes Appellant was wearing at that store matched the clothes worn by the robber at the two Athens stores.

In a statement to the police two days after the crimes, Appellant said that his girlfriend had been arrested for shoplifting before the crimes. Appellant and his girlfriend have one child, and his girlfriend has two other children. Appellant claimed that he had been at home with the children on the evening of December 4 and early morning hours of December 5. However, testimony from Sammie Hancock, the girlfriend's mother, contradicted Appellant's account of the events. On the evening of December 4, Hancock was with her daughter's two children fathered by another man. Her daughter was not there because she had not yet posted bond after her shoplifting arrest. Hancock testified that Appellant dropped off his child at her house that evening and said that he was going to get his "baby out" and was going to "do something he hadn't did in a long time." She said Appellant was wearing a black hoodie and jeans. She also testified that the next morning, December 5, as she waited at the bus stop with the children, Appellant stopped by and asked if she had heard about the robberies and murder that had occurred, naming the incidents discussed above. She said she had not, and Appellant left.

Similar transaction evidence was also presented at trial. Appellant's friend and co-worker, Danero Alexander, testified that sometime in 2005 or 2006, he and Appellant were driving near Athens one night when Appellant told Alexander to pull over to a convenience store and park behind it, because he intended to rob it. Appellant put a black wave cap over his mouth. Alexander told Appellant that he did not want to participate, and Appellant said that he used to rob convenience stores in "country counties." Appellant emphasized

that he never got caught because he parked the car behind the convenience store and had a driver waiting for him to return. Alexander refused to stop the car and drove home.

The State also introduced evidence of two armed robberies that Appellant committed in 1995, to which he pled guilty in 1996. The evidence showed that Appellant and two other boys used a gun to rob a man in front of an Athens nightclub about 3:00 a.m., then later that same day Appellant and another boy used a gun to rob a woman in the parking lot of a nearby church.

When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Appellant contends that the trial court erred by permitting the State to introduce evidence of the two armed robberies he committed in 1995 as similar transactions. We disagree.

> Evidence that a defendant has committed an independent offense or bad act is admissible if the State shows and the trial court rules that there is a sufficient connection or similarity between the independent offenses or acts and the crime charged so proof of the former tends to prove the latter. . . . [T]he proper focus is on the similarities, not the differences, between the separate crime and the crime in question.

*Whitehead v. State*, 287 Ga. 242, 249 (695 SE2d 255) (2010) (citation and punctuation omitted).

Contrary to Appellant's contention, the 12-year period between the prior offenses and the new crimes did not compel exclusion of the similar transaction evidence, particularly because Appellant spent ten years of that time incarcerated for the 1995 robberies. See *Ledford v. State*, 289 Ga. 70, 83 (709 SE2d 239) (2011) (holding that the relevance of a similar 15-year-old crime was not eroded because the defendant was incarcerated for ten of the intervening years). Appellant also calls our attention to several differences between the 1995 armed robberies and the crimes in this case, but "the . . . crimes need not be carbon copies of one another to be admissible." *Moore v. State*, 273 Ga. 11, 13 (537 SE2d 334) (2000). Here, the evidence showed that Appellant committed the two previous 1995 robberies

with a handgun on the same day at locations near each other in Athens. Based on these similarities to the crimes for which the Appellant was on trial, the trial court's decision to admit the evidence to show motive, common plan, or scheme was not an abuse of discretion. See *Moore v. State*, 288 Ga. 187, 190 (702 SE2d 176) (2010) ("A trial court's decision to admit similar transaction evidence will not be disturbed absent an abuse of discretion."). We also note that the court properly gave the jury a detailed limiting instruction regarding their consideration of the similar transaction evidence.

3. Appellant claims that the trial court erred in denying his motion for a change of venue due to pretrial publicity. To succeed on this claim, Appellant must show either that the setting of the trial was inherently prejudicial or that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. See *Edmond v. State*, 283 Ga. 507, 508 (661 SE2d 520) (2008). The trial court's ruling on a motion to change venue is reviewed on appeal only for abuse of discretion. See id.

To demonstrate inherent prejudice, "[t]he record must establish that the [pretrial] publicity contained information that was unduly extensive, factually incorrect, inflammatory or reflective of an atmosphere of hostility." *Gear v. State*, 288 Ga. 500, 502 (705 SE2d 632) (2011). Moreover, " '(e)ven in cases of widespread pretrial publicity, situations where such publicity has rendered a trial setting inherently prejudicial are extremely rare.' " Id. (citation omitted.). The trial court determined that Appellant failed to carry his burden to show inherent prejudice, and our review of the record shows that the court did not abuse its discretion in doing so.

As for actual prejudice, during voir dire, ten of the 104 members of the jury pool reported strong feelings about the case and were excused for cause. Appellant contends that an additional six jurors should have been excused after displaying a high level of knowledge and emotion about the case. Even if we accept that contention, however, the excusal percentage would have been 15 percent, which does not establish actual prejudice. See *Gear*, 288 Ga. at 502 (holding that an excusal percentage of 17 percent was not "indicative of such prejudice as would mandate a change of venue").

Issues of pretrial publicity were properly dealt with in this case through voir dire and the jury selection process, as they are in almost all cases. See *McWhorter v. State*, 271 Ga. 461, 462 (519 SE2d 903) (1999). Accordingly, this enumeration of error has no merit.

4. A State's witness who testified at a preliminary hearing could not be located for trial. Over Appellant's objection, the trial court permitted the witness's preliminary hearing testimony to be read to the jury at trial. Appellant claims that the State did not exercise due

diligence in seeking to locate the witness and thus the trial court erred in admitting his testimony as an unavailable witness.

Testimony given by an "inaccessible" witness under oath in a former proceeding on substantially the same issue and between the same parties is admissible under OCGA § 24-3-10. See *Dillingham v. State*, 275 Ga. 665, 667 (571 SE2d 777) (2002).[2] "[T]he inaccessibility of a witness under [OCGA § 24-3-10] depends upon a showing by the party seeking to use the witness' former testimony that he has used due diligence in trying to locate and bring to court the absent witness." *Jones v. State*, 250 Ga. 166, 168 (296 SE2d 598) (1982). "Whether a witness is inaccessible within the meaning of § 24-3-10 is a decision left to the discretion of the trial court, which will not be reversed absent manifest abuse." *Dillingham*, 275 Ga. at 667.

Here, a police officer visited the witness's last known address several months before trial but was told that the witness did not live there anymore. Because the witness had recently been incarcerated, the officer reviewed jail records to see who had visited him and obtained the name and address of a woman thought to be the witness's girlfriend. The officer went to her address several times, but could not locate her. An investigator for the District Attorney's office was able to contact the woman shortly before trial. She told the investigator that she and the witness were no longer together and she did not know where he was. She also said that the witness knew the authorities were looking for him, and he was trying to evade them. The investigator also spoke with the witness's brother, the brother's girlfriend, the witness's probation officer, and several additional acquaintances. Despite these efforts by State officials, the witness could not be located.

Appellant argues that the State could have done more in its search, such as consulting additional public records. More might always be done, but we cannot say that the trial court abused its discretion in determining that the State had used due diligence and that the witness was unavailable under OCGA § 24-3-10. See *Wade v. State*, 274 Ga. 791, 792-793 (560 SE2d 14) (2002) (holding that the trial court did not abuse its discretion in determining that a witness was unavailable after the local sheriff interviewed the witness's acquaintances, co-workers, and those he lived with at his last known address).

5. Appellant asserts that the trial court erred in qualifying Marla

---

[2] We have explained that such testimony does not violate the accused's right of confrontation, as interpreted in *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), if the accused had the opportunity to cross-examine the unavailable witness at the earlier proceeding, as occurred here. See *Martin v. State*, 284 Ga. 504, 509-510 (668 SE2d 685) (2008).

Lawson, a GBI sketch artist, as an expert in forensic artistry, due to her lack of formal art training, current membership in professional organizations, and peer review. " 'To qualify as an expert . . . [,] generally all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study. Formal education in the subject at hand is not a prerequisite for expert status.' " *Williams v. State*, 279 Ga. 731, 732 (620 SE2d 816) (2005) (citation omitted). The trial court's ruling on this issue is also reviewed only for abuse of discretion. See id.

The State presented evidence that Lawson had been working as a forensic artist for over 30 years; had drawn thousands of composite sketches for police investigations, including many high profile cases; had testified as an expert witness in dozens of cases; and had been a member of the professional organization for forensic artists in the past, during which time she helped draft the "standards and guidelines for forensic art." Although she has not had her work formally peer reviewed, she testified that her professional colleagues have told her that her work is the best they have ever seen. Based on this evidence, we find no abuse of discretion in the trial court's determination that Lawson qualified as an expert witness.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 5, 2012.

*Thomas J. Killeen,* for appellant.

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General,* for appellee.