303 Ga. 24
FINAL COPY

S17A1887.  DE LA CRUZ v. THE STATE.

HUNSTEIN, Justice.

Appellant Eduardo De La Cruz was tried and convicted of the murder of Brenda Gibbs.[1]  On appeal, Appellant claims four instances of trial court error and two claims of error by the motion for new trial court.   We affirm.

Viewed in a light most favorable to the jury's verdict, the evidence adduced at trial established that, at all relevant times, Appellant and the victim, Brenda Gibbs, worked opposite shifts at the Production Anodizing plant in Adel, Georgia.  Though the two had a child together, their romantic relationship was marred with a history of verbal, physical, and sexual assault.  The State

---

[1] Appellant was indicted by a Cook County grand jury on January 10, 1996, for one count of malice murder.  After a jury trial from September 23-24, 1996, Appellant was found guilty and was subsequently sentenced on October 4, 1996, to life in prison.  Appellant timely filed a motion for new trial on October 31, 1996, which was amended on February 12, 2016.  After a hearing on the motion as amended, the trial court denied the same on February 10, 2017.  Appellant timely filed a notice of appeal.  This appeal was docketed to the August 2017 term of this Court and was thereafter submitted for a decision on the briefs.

adduced testimony that Gibbs was afraid of Appellant and that, prior to her murder, Appellant told Gibbs he should kill her, get the money from her life insurance policy (of which he was the beneficiary), and take their child to Mexico. Appellant repeated similar threats in the presence of co-workers.

At 9:00 p.m. on August 19, 1995, Appellant dropped Gibbs off at work with a promise to pick her up after her shift ended at 5:00 the next morning. Gibbs, her co-worker, Rodney Tippins, and a security guard were the only people working at the plant that evening. A couple hours into their shift, Tippins ran into Gibbs; she appeared as if she had just been crying, though she would not tell Tippins what was wrong. Around 4:00 a.m. on August 20, the security guard saw Gibbs and Appellant together in the laboratory where Gibbs was working. Gibbs' back was to Appellant and they were not talking.

A little after 5:00 a.m., Tippins and the security guard walked over to the lab where they found Gibbs on the floor bloodied and unresponsive. She was lying over a partially broken bar stool covered in blood, and a "t-shape" piece of wood with nails was lodged in her head. Meanwhile, Appellant had failed to return to the plant to pick up Gibbs as previously promised.

2

While processing the scene, law enforcement found a broken two-by-four and a metal conduit pipe, both of which were covered in blood. Phosphoric acid had also dripped onto the floor from a broken glass container. Officers collected samples from the blood spatter on the cabinets and walls, as well as a black hair from Gibbs' shirt and a fingerprint from the pipe. During the autopsy, the medical examiner found defensive wounds on Gibbs' hands and arms and opined that Gibbs died from blunt force trauma to the head, likely caused by being hit with either the two-by-four or conduit pipe. The medical examiner also clipped the victim's fingernails and preserved them for potential testing.

Appellant spoke with law enforcement and denied having any involvement in Gibbs' murder. Officers later searched Appellant's home and car, during which they collected a pair of Appellant's tennis shoes; the soles of the shoes fluoresced under a black light. The lead detective, who had been present at the crime scene and walked through the phosphoric acid on the floor, ran his shoes under the same black light and they also fluoresced. The detective checked his shoes against the shoes of other individuals who did not walk the crime scene; the soles of their shoes did not have the same reaction. The State

3

also adduced evidence that plant employees were required to wear steel toed shoes and a cover suit to protect their clothes while in the lab.

Appellant called three witnesses in his defense, including an alibi witness.

1. Though not enumerated by Appellant, we find that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Appellant was guilty of the crime for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

## Trial Court Claims

2. At Appellant's pre-trial probable cause hearing, Appellant called Jose Andres to testify for the defense as an alibi witness. Andres testified, inter alia, that, on the night before the murder, he saw Appellant and the victim together laughing, talking, and kissing. Andres testified that he remained with Appellant until midnight that evening. Andres was then subjected to a thorough and sifting cross-examination by the State. When Andres was unavailable to be called as a witness at trial, the defense sought to read the witness' prior sworn

4

testimony to the jury. The trial court denied this request. Appellant alleges this was an abuse of discretion. We disagree.

Under our old Evidence Code,

> [t]estimony given by an "inaccessible" witness under oath in a former proceeding on substantially the same issue and between the same parties [was] admissible under [former] OCGA § 24-3-10. [Cit.] "The inaccessibility of a witness under [former] OCGA § 24-3-10 depend[ed] upon a showing by the party seeking to use the witness' former testimony that he ha[d] used due diligence in trying to locate and bring to court the absent witness." [Cit.]

(Punctuation omitted.) Thomas v. State, 290 Ga. 653, 657 (723 SE2d 885) (2012). Georgia courts have been "fairly strict in requiring proof of sustained efforts by parties to locate the witness in question before allowing the admission of such testimony." (Citation and punctuation omitted.) Hill v. State, 291 Ga. 160, 163 (728 SE2d 225) (2012). Indeed, "due diligence requires more than a few phone calls," and a "party must make a serious, competent effort to find and bring the witness to court." (Citation and punctuation omitted.) Id. "Whether a witness is inaccessible within the meaning of [former] § 24-3-10 is a decision left to the discretion of the trial court, which will not be reversed absent manifest abuse." (Citation and punctuation omitted.) Thomas, 290 Ga. at 657.

Here, the morning of trial, defense counsel informed the trial court that Andres was "out of [the] country" and, therefore, not subject to the trial court's subpoena power. Counsel continued,

> We don't even know where he is. He is somewhere around Acapulco, Mexico; western Mexico. We have made every diligent effort that we could make to try to get his whereabouts. I've had members of [Appellant's] family trying to find him, making inquiries, trying to locate him. We cannot get him. We cannot find him.

A witness who has permanently moved to a foreign country is unavailable within the meaning of former OCGA § 24-3-10. See also Mancusi v. Stubbs, 408 U.S. 204, 212-213 (92 SCt 2308, 33 LE2d 293) (1972). Here, however, Appellant did not provide the trial court with evidence that Andres had moved to Mexico; nor did he say when efforts to locate Andres had begun or what efforts had been made to subpoena Andres at his last known residence in Georgia as provided for in former OCGA § 24-10-23. Instead, he merely stated that Andres was "out of [the] country." Without evidence that Andres had moved to another country, thereby permanently placing himself beyond the subpoena power of the trial court, Appellant did not establish the required showing of due diligence to support a finding of unavailability. Mancusi, 408

6

U.S. at 212-213.  See also <u>Jones v. State</u>, 250 Ga. 166 (2) (296 SE2d 598) (1982).

However, even assuming Appellant had sufficiently shown Andres' unavailability, the trial court's exclusion of the prior testimony was harmless. Because Andres was only with Appellant until midnight the night of Gibbs' death, he could not have provided Appellant with an alibi for the time of Gibbs' murder which, based upon the evidence, occurred sometime between 4:00 and 5:00 a.m. on August 20.  Moreover, Andres' prior sworn testimony would have been cumulative of Appellant's other alibi witness who testified at trial that he was with Appellant from 9:15 p.m. to 11:30 p.m. on August 19, and then from 1:30 a.m. until approximately 4:30 a.m. on August 20.  Finally, though Andres could have testified that Appellant and the victim were "laughing and kissing" before Appellant dropped her off at work, the evidence of Appellant's prior abuse toward the victim, as well as his numerous statements that he wished her dead, were overwhelming.  Therefore, the trial court did not commit reversible error in denying Appellant's request to read Andres' prior sworn testimony to the jury.

3. The morning of trial, the State moved the trial court to prohibit Appellant from presenting evidence that another individual, Otis Sanders, had actually committed the murder. Specifically, the State asked the trial court to prevent defense counsel from calling Linda Leriche who, ostensibly, would have testified that Sanders provided a false alibi to law enforcement for the time of the murder, that he physically abused Leriche, and that Sanders drove Leriche to the plant on some unknown date before Gibbs' death and threatened to kill Leriche. The trial court granted the State's motion in limine, which Appellant contends was error. We disagree.

> It is well established that

> a defendant is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried. However, the proffered evidence must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature.

(Citations omitted.) Gilreath v. State, 298 Ga. 670, 673 (784 SE2d 388) (2016). "[A] reasonable inference of the defendant's innocence [is] raised by evidence that render[s] the desired inference more probable than the inference would be without the evidence." Oree v. State, 280 Ga. 588, 593 (630 SE2d 390) (2006).

8

However, "[e]vidence that merely casts a bare suspicion on another or 'raises a conjectural inference as to the commission of the crime by another is not admissible.'" (Citations omitted.) <u>Curry v. State</u>, 291 Ga. 446, 453 (729 SE2d 370) (2012).

Neither Sanders' alleged assault of Leriche at some unknown time in the past nor his providing law enforcement with an alleged false alibi for the night of the murder directly connects him to the corpus delicti. Moreover, the proffered evidence does not raise a reasonable inference of Appellant's innocence as there is no evidence that Sanders was at the plant on the night of Gibbs' murder. Compare <u>Gilreath</u>, 298 Ga. at (2) (trial court abused its discretion by prohibiting defendant from questioning individual about prior allegation of child abuse where individual was the only other adult in the home on day child victim's death occurred, and the proffered evidence would have raised a reasonable inference of defendant's innocence); <u>Scott v. State</u>, 281 Ga. 373 (3) (637 SE2d 652) (2006) (same). Indeed, the proffered evidence, at best, casts a bare suspicion on Sanders. Accordingly, we find no error.

4. Appellant also argues that the trial court erred in determining that

the hearsay statements from the victim regarding prior instances of abuse were admissible under the necessity exception. Specifically, Appellant alleges that the admission of hearsay testimony through Rodney Tippins and Denise De La Cruz was an abuse of discretion because their testimony lacked sufficient indicia of trustworthiness. As an initial matter, Tippins' testimony regarding the tumultuous relationship between Appellant and Gibbs was based purely upon his observation of the couple, not based upon anything Gibbs told Tippins. Such testimony does not qualify as hearsay; accordingly, this portion of Appellant's claim fails.

Regarding hearsay testimony admitted through Denise De La Cruz, our old Evidence Code provided

> three basic requirements for the admission of hearsay under the necessity exception: (1) the declarant of the statement is "unavailable," (2) the declarant's statement "is relevant to a material fact and . . . more probative on that material fact than other evidence that may be procured and offered," and (3) the statement exhibits specific indicia of reliability.

(Citations omitted.) Mills v. State, 287 Ga. 828, 831 (700 SE2d 544) (2010). The test for trustworthiness considers the totality of the circumstances under which the statements were made. Gibson v. State, 290 Ga. 6 (3) (717 SE2d 447)

10

(2011). "Whether a statement is trustworthy is a matter for the trial court's discretion, and the exercise of such discretion will not be overturned absent an abuse of discretion." Id. at 8.

The record shows that Gibbs and Denise De La Cruz were close friends and that Gibbs confided in her details about her abusive relationship with Appellant. Many times these statements were corroborated either by physical evidence of violence observed by Denise De La Cruz, such as bruising, or Appellant's own comments regarding his hatred of Gibbs and his desire that she would die. Accordingly, we conclude that the trial court did not abuse its discretion by admitting the testimony of Denise De La Cruz pursuant to the necessity exception.

5. During its case-in-chief, the State called Officer Jeremy Rowe to testify about Appellant's custodial interview. While on direct examination, Officer Rowe testified that he knew Appellant committed the murder because Appellant had lied during his interview. Appellant objected, asserting that this testimony went to the ultimate issue of the case. The trial judge sustained the objection. After the defense rested its case-in-chief, Appellant moved for a

mistrial based upon Officer Rowe's prior testimony; the trial court denied the motion.

Appellant contends that the trial court abused its discretion by denying his motion for mistrial. "A motion for mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion." (Citation and punctuation omitted.) Ragan v. State, 299 Ga. 828, 833 (3) (792 SE2d 342) (2016). Here, the record shows that trial counsel completed his cross-examination of Officer Rowe, allowed the State to rest its case, called three witnesses in the defense's case-in-chief and then rested before moving for a mistrial based upon the officer's direct examination testimony. Because counsel did not timely move for a mistrial, this issue is not properly preserved for review. See Burrell v. State, 301 Ga. 21 (5) (799 SE2d 181) (2017).

### Post-Trial Claims

6. Next, Appellant argues that the 21-year delay between his conviction and the hearing on his motion for new trial violated his right to due

process. This Court has previously recognized "'that substantial delays during the criminal appellate process implicate due process rights.'" Payne v. State, 289 Ga. 691, 693 (715 SE2d 104) (2011) (citing Chatman v. Mancill, 280 Ga. 253, 256 (626 SE2d 102) (2006)). We assess such claims pursuant to the four factor analysis utilized for speedy trial claims set forth in Barker v. Wingo.[2] Glover v. State, 291 Ga. 152 (3) (728 SE2d 221) (2012). In doing so, "we must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion." (Citations omitted.) State v. Buckner, 292 Ga. 390, 391 (738 SE2d 65) (2013). With these principles in mind, we review the record and Appellant's claim.

(i) *Length of delay.* Here, almost 21 years passed between Appellant's conviction and his motion for new trial hearing. We accept the motion for new trial court's determination that this lengthy delay was excessive and must be

[2] 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972).

13

weighed against the State in the first prong of the <u>Barker</u> analysis. See <u>State v. Porter</u>, 288 Ga. 524 (2) (c) (2) (705 SE2d 636) (2011).

(ii)   *Reasons for the delay.* As to the second prong, the motion for new trial court attributed the lengthy delay to Appellant's actions. This finding, we conclude, was error in that the record indicates that both parties are at fault for the delay. This case has a convoluted post-conviction history, which includes the appearance and withdrawal of four different attorneys who represented Appellant during the first 10 years of his pending motion for new trial. During that time, the record shows that transcripts and other materials were sent to Appellant's various attorneys, but none appear to have done any work on his appeal. However, the record is silent as to why so many attorneys represented Appellant during this period of time and why nothing of substance was done during their representation. When there is no explanation in the record as to why nothing occurred in Appellant's case while his motion for new trial was pending, we are required to attribute the delay to the State. See <u>Glover</u>, 291 Ga. at (3).

Notably, after Appellant's last attorney withdrew in 2006, he was pro se until new counsel filed a notice of appearance in 2012. Appellant filed nothing

14

during this six-year hiatus in representation. Additionally, once new counsel entered the case in 2012, they pursued a motion for post-conviction DNA testing, instead of Appellant's motion for new trial which, they acknowledged, had been pending for approximately 17 years. Still, counsel proceeded with the DNA motion, and subsequently filed an interlocutory appeal from the denial of the same but, inexplicably, did not pursue the much older pending motion for new trial until May 2016. Consequently, this portion of the delay seems attributable to Appellant. Still, after weighing all of the evidence in the record, this factor counts against the State, though with less weight as the delay does not appear to have been designed to deliberately sabotage Appellant's case. See Leslie v. State, 301 Ga. 882 (2) (b) (ii) (804 SE2d 351) (2017); Ruffin v. State, 284 Ga. 52, 60 (663 SE2d 189) (2008).

(iii) *Defendant's assertion of the right.* We also agree with the motion for new trial court that Appellant failed to assert his appellate rights for much of the 21-year delay. Payne, 289 Ga. at (2) (b). Indeed, in the 6 year period when Appellant was representing himself, nothing was filed. Aside from Appellant's one letter sent to the trial court in May 1999 requesting his docket

15

sheet and the name of his attorney, Appellant did not write to the court to complain about the delay or request that his appeal be pursued. Moreover, he did not assert that his due process rights had been violated until current counsel amended Appellant's motion for new trial in February 2016, finally asserting that there had been an excessive delay. Accordingly, this factor, as the motion for new trial court properly found, weighs heavily against Appellant.

(iv) *Prejudice*. "Even assuming that the first three <u>Barker</u> factors – length of the delay, the reason for the delay, and the defendant's assertion of his right – weigh in favor of [Appellant], his due process claim nevertheless fails because [Appellant] failed to show that he was prejudiced by the delay." <u>Veal v. State</u>, 301 Ga. 161, 167 (800 SE2d 325) (2017). The record supports the motion for new trial court's finding that Appellant failed to adduce any evidence to show actual "prejudice to [Appellant's] ability to . . . assert his arguments on appeal" so that there is a "reasonable probability that, but for the delay, the result of [this] appeal would have been different." (Citation and punctuation omitted.) <u>Chatman</u>, 280 Ga. at 260. Therefore, this factor does not measurably favor Appellant.

16

Based on the foregoing, we conclude that the delay in resolving Appellant's motion for new trial did not violate his right to due process. "[E]ven if the trial court had properly weighed the second factor lightly against the government, it was incumbent upon the trial court to find no constitutional error given appellant's long delay in asserting his right to a speedy trial and his failure to demonstrate prejudice." Dillard v. State, 297 Ga. 756, 763 (778 SE2d 184) (2015). See also State v. Johnson, 291 Ga. 863, 868 (734 SE2d 12) (2012). "While we do not approve of the delay occasioned here, we (nonetheless find that) the [motion for new] trial court did not abuse its discretion in ruling that [Appellant's] due process claim must fail." (Citations omitted.) Glover, 291 Ga. at 156.

7. On January 6, 2014, Appellant filed a motion for post-conviction DNA testing requesting that the victim's fingernail clippings, the two-by-four, the conduit pipe, and the hair collected from the victim's body at the scene be tested for "touch DNA," or DNA recovered from skin cells that may be left by a person after touching an item. Following a hearing, the trial court denied the motion. Appellant alleges that this was error.

OCGA § 5-5-41 (c), the statute that controls motions for post-conviction DNA testing, states, in pertinent part, that

> (1) . . . a person convicted of a felony may file a written motion before the trial court that entered the judgment of conviction in his or her case for the performance of forensic deoxyribonucleic acid (DNA) testing.
> . . .
> (3) The motion shall be verified by the petitioner and shall show or provide the following:
>> (A) Evidence that potentially contains deoxyribonucleic acid (DNA) was obtained in relation to the crime and subsequent indictment, which resulted in his or her conviction;
>> (B) The evidence was not subjected to the requested DNA testing because the existence of the evidence was unknown to the petitioner or to the petitioner's trial attorney prior to trial or because the technology for the testing was not available at the time of trial;
>> (C) The identity of the perpetrator was, or should have been, a significant issue in the case; [and]
>> (D) The requested DNA testing would raise a reasonable probability that the petitioner would have been acquitted if the results of DNA testing had been available at the time of conviction, in light of all the evidence in the case;
>> …

Id.

Appellant may be entitled to post-conviction DNA testing if he meets all of the statutory requirements listed in OCGA § 5-5-41 (c) (3), (4)[3] and (7)[4]. See

---

[3] The petitioner shall state:
(A) That the motion is not filed for the purpose of delay; and

OCGA § 5-5-41 (6) (A) and (7); <u>Crawford v. State</u>, 278 Ga. 95 (2) (b) (597 SE2d 403) (2004); <u>Williams v. State</u>, 289 Ga. App. 856, 856 (658 SE2d 446) (2008).

---

  (B) That the issue was not raised by the petitioner or the requested DNA testing was not ordered in a prior proceeding in the courts of this state or the United States.

OCGA § 5-5-41 (c) (4).

[4] The court shall grant the motion for DNA testing if it determines that the petitioner has met the requirements set forth in paragraphs (3) and (4) of this subsection and that all of the following have been established:
  (A) The evidence to be tested is available and in a condition that would permit the DNA testing requested in the motion;
  (B) The evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;
  (C) The evidence was not tested previously or, if tested previously, the requested DNA test would provide results that are reasonably more discriminating or probative of the identity of the perpetrator than prior test results;
  (D) The motion is not made for the purpose of delay;
  (E) The identity of the perpetrator of the crime was a significant issue in the case;
  (F) The testing requested employs a scientific method that has reached a scientific state of verifiable certainty such that the procedure rests upon the laws of nature; and
  (G) The petitioner has made a prima facie showing that the evidence sought to be tested is material to the issue of the petitioner's identity as the perpetrator of, or accomplice to, the crime, aggravating circumstance, or similar transaction that resulted in the conviction.

OCGA § 5-5-41 (c) (7).

Here, the motion for new trial court properly denied Appellant's motion as his request failed to meet OCGA § 5-5-41 (c) (3) (D).[5] At trial, the jury was informed that: all of the blood collected and tested from the crime scene was traced back to the victim; the fingerprint found on the conduit pipe did not match Appellant's fingerprint; and the hair obtained from the scene was determined to be unsuitable for comparison. Because the jury was informed that there was no physical evidence linking Appellant to the crime scene, and in light of all of the evidence presented at trial, the motion for new trial court properly found that Appellant failed to show a reasonable probability that he would have been acquitted had the DNA results been available at the time of trial. See OCGA § 5-5-41 (c) (3) (D).

Consequently, the motion for new trial court did not err in denying

[5] Though the parties do not argue this point, we are not convinced that this case involved a request to test evidence that "was unknown to the petitioner or to the petitioner's trial attorney prior to trial or because the technology for the testing was not available at the time of trial." See OCGA § 5-5-41 (c) (3) (B). Not only did Appellant know about all of the physical evidence prior to trial, but everything except for the hair was introduced for the jury's consideration. Moreover, though Appellant argued both at the post-conviction hearing and in his supporting briefs that the technology to test for touch DNA was not available at the time of his trial, Appellant failed to adduce *evidence* establishing this fact with respect to the conduit pipe, the two-by-four and the fingernail clippings. Indeed, the only testimony that addressed the issue of the availability of the technology for testing was elicited by the State on cross-examination, and it was limited to the root and mitochondrial testing of the hair.

Appellant's post-conviction motion for DNA testing.

Judgment affirmed.  All the Justices concur.

Decided February 5, 2018.

Murder. Cook Superior Court. Before Judge Perkins.

Alston & Bird, Mary T. Benton, Derin B. Dickerson, Tejas S. Patel, Kacy Brake, Emily C. Hootkins, Andrew J. Liebler, Andrew M. Brown; Francisco Gonzalez-Burgos, for appellant.

Richard L. Perryman III, District Attorney, J. Allen Lawson, Bianca P. Goodman, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mary C. Greaber, Elizabeth H. Brock, Assistant Attorneys General, for appellee.