**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

April 9, 2024

# In the Court of Appeals of Georgia

A24A0344. STRICKLAND v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial in April 2003, Jessie Strickland was convicted of one count of aggravated child molestation and three counts of child molestation. Trial counsel filed a timely motion for new trial. New counsel eventually filed an amended motion for new trial in April 2022, a hearing on the motion was held in March 2023, and the trial court denied the motion in June 2023. Strickland then brought this appeal, claiming that the evidence was insufficient to support his convictions and that the delay between his convictions and the resolution of his motion for new trial violated his due process rights. We disagree and therefore affirm Strickland's convictions and sentence and the denial of his motion for new trial.

Viewed in the light most favorable to the verdicts,[1] the evidence at trial showed that in 2001 Strickland lived with his daughter, his common-law wife,[2] and his wife's daughter, a 12-year-old girl named J. M. A 12-year-old girl named H. M. and an 11-year-old boy named B. M. lived together nearby. Strickland drove loads of salt for a living and often took J. M. and H. M. on overnight trips.

B. M. testified at trial that because he was concerned that Strickland was having sexual relations with J. M., he looked through a small hole in the wall of J. M.'s bedroom when Strickland and J. M. were there together, and he observed them having sex. When B. M. was asked to elaborate on the movements of Strickland and J. M., he testified that it was dark and he "couldn't really see nothing," but he maintained that there was enough light for him to see the sex act. B. M. told his mother's boyfriend about what he saw. J. M. was asked about the incident and initially denied that Strickland molested her. However, Strickland was present at the time of this initial denial, and J. M. subsequently disclosed that Strickland had been having sex with her. Strickland admitted to his wife that he had sex with J. M. "one time only."

---

[1] See *Patch v. State*, 337 Ga. App. 233, 235 (1) (786 SE2d 882) (2016).

[2] Strickland and his wife subsequently divorced.

2

B. M. also told his mother about sexual relations between Strickland and H. M. After initially denying that Strickland molested her, H. M. disclosed that he had sex with her, performed oral sex on her, and showed her a natural piercing or hole in his penis.

H. M. testified at trial that she was sleeping in Strickland's truck when she awoke to him undressing her and performing oral sex. H. M. also testified that Strickland fondled her and had sex with her. Strickland told H. M. not to say anything about their sexual encounters.

J. M. testified at trial that Strickland had sex with her in her bedroom and in his truck many times. Strickland threatened to hurt J. M. and her mother if she told anyone about the molestation. H. M. and J. M. testified that Strickland had sex with J. M. in the same bathroom where H. M. was taking a bath. Strickland told H. M. that if she told anyone about this incident, she "wouldn't see the light of day." H. M. testified that she observed Strickland have sex with J. M. in his truck. H. M. and J. M. testified that Strickland showed them the natural piercing or hole in his penis.

At trial, Strickland's counsel called several members of Strickland's family to testify that they had heard from various sources, including H. M. and J. M., that the

accusations against him were false. Trial counsel also: presented evidence that J. M.'s mother received financial assistance from the State's Victim Assistance Program; emphasized purported inconsistencies in the disclosures of abuse by J. M. and H. M.; and argued that J. M. and her mother were financially motivated to falsely accuse Strickland and that H. M. made her accusations because of the attention J. M. received from her accusations.

Strickland was charged with one count of aggravated child molestation based on sodomy of H. M., in violation of OCGA § 16-6-4 (c) ("Count One"); one count of sodomy of H. M., in violation of OCGA § 16-6-2 (a) ("Count Two"); one count of child molestation based on sexual intercourse with J. M., in violation of OCGA § 16-6-4 (a) ("Count Three"); one count of statutory rape of J. M., in violation of OCGA § 16-6-3 (a) ("Count Four"); and two counts of child molestation based on showing J. M. and H. M. the natural piercing or hole in his penis, in violation of OCGA § 16-6-4 (a) ("Counts Five and Six"). The jury found Strickland guilty of all charges. On April 18, 2003, the trial court merged Count Two into Count One, merged Count Four into Count Three, and sentenced Strickland to a total sentence

of 30 years, with the first 25 years to be served in confinement and the remainder on probation.[3]

Trial counsel filed a timely motion for new trial in May 2003. In 2007, trial counsel withdrew from representation and a public defender was appointed to represent Strickland. Apparently, in 2005, 2006, and 2009, Strickland sent pro se letters to the trial court and/or the trial court clerk. However, these letters are not included in the appellate record. Trial counsel and the trial court clerk have since passed away.

The next pleading in the record after the motion for new trial is an amended motion for new trial, filed by newly retained counsel in April 2022. In the amended motion for new trial, Strickland claimed that: his due process rights had been violated by the delay in the pursuit and resolution of his motion for new trial; trial counsel rendered ineffective assistance; the evidence did not support his convictions; and the prosecutor engaged in misconduct during the trial. At a March 2023 hearing on the motion for new trial, Strickland testified about purported deficiencies in trial counsel's representation. However, Strickland presented no argument or evidence

---

[3] The court also ordered Strickland to pay a fine of $2,500 and restitution of $5,000.

that he had been unable to access any evidence due to the delay in resolving his motion for new trial.

The trial court issued an order denying the motion for new trial in June 2023. The court concluded that the evidence was sufficient to support Strickland's convictions and that any claims of ineffective assistance and prosecutorial misconduct lacked merit.

The trial court also concluded that the delay in resolving Strickland's motion for new trial did not violate his due process rights. The court assessed the four factors for evaluating such a claim — the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant — and determined the following. First, the considerable delay of 20 years weighed in Strickland's favor. Second, the record did not show the reason for the delay. Letters from Strickland dated October 10, 2005, and September 8, 2006, indicated that the matter may have been set down by the court for a hearing on the motion for new trial at some point, but inexplicably the hearing was never convened. While the delay appeared to be a mixture of the negligence of trial counsel and the State, the delay should be attributed to the State because it bears ultimate responsibility for the docket,

and this second factor weighed in Strickland's favor. Third, the record reflected the following pro se filings by Strickland:

> (1) a September 7, 2005 "Motion to Dismiss Attorney and to Appoint Counsel for an Appeal," specifically alleging that [trial counsel] failed to file his appeal; (2) a September 28, 2005 "Motion for Deliverance of Petitioner;" (3) a December 15, 2005 "Request for Status on Motion," seeking an update on his pending motion to dismiss his attorney; (4) a October 10, 2005 letter to the Clerk of Court seeking appointment of an attorney for appeal; (5) a September 8, 2006 "Request for Hearing to be Re-Conducted," seeking a hearing on his motion to dismiss and citing a defendant's right to a meaningful appeal; and finally, (6) a June 23, 2009 letter to the Clerk of Court requesting a copy of docket entry log sheets to aid in his preparation of habeas pleadings.

While Strickland made efforts in 2005 and 2006 to obtain the appointment of a public defender and to invoke his right to appeal, he did not assert this right from 2006 through the filing of his amended motion for new trial in 2022, a lapse of nearly 16 years, and it was not until Strickland retained current counsel that a clear and unequivocal assertion of this right was made. Thus, Strickland's failure to vigorously assert his appellate rights weighed against him.

The trial court determined the following regarding the final factor of prejudice to the defendant. Strickland failed to offer any specific evidence of harm due to the

delay, and his vague assertions of prejudice stemming from trial counsel's death were insufficient. Strickland had neither identified any evidence he was unable to produce nor established that any defense or avenue of relief he argued in his amended motion for new trial was affected by the delay. Because Strickland's underlying claims in his motion for new trial lacked merit, there was not a reasonable probability that the result of his appeal would have been different if not for the delay. Thus, this factor weighed heavily against Strickland.

Strickland then filed this appeal.

1. Strickland argues that the evidence was insufficient to support his convictions because there was no physical evidence, at one point J. M. and H. M. denied any inappropriate conduct by him, and the lone witness to inappropriate conduct, B. M., admitted that he could not see anything because it was dark. We disagree and conclude that the evidence supported Strickland's convictions.

> When a defendant challenges the sufficiency of the evidence supporting his criminal conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. It is the function of the jury, not the reviewing court, to resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from the evidence. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, the jury's verdict will be upheld.

(Citations, punctuation, and emphasis omitted.) *Thomas v. State*, 324 Ga. App. 26 (748 SE2d 509) (2013).

J. M. and H. M. testified at trial about the inappropriate sexual relations Strickland had with them. Although Strickland emphasizes J. M.'s and H. M.'s initial denial of molestation, "it has been firmly established that the resolution of conflicts between a victim's trial testimony and her pretrial inconsistent statement is for the jury." *McCurdy v. State*, 359 Ga. App. 885, 887-888 (1) (d) (860 SE2d 172) (2021).

Further, Strickland admitted to his wife that he had sex with J. M., and B. M. testified that he observed Strickland have sex with J. M. Although Strickland emphasizes B. M.'s testimony that it was dark and that he "couldn't really see nothing," when the testimony is viewed in context it is apparent that B. M. was merely explaining that he could not provide many details on the movements of Strickland and J. M., and he maintained that there was enough light for him to see the sex act. "[I]t is the role of the jury to resolve conflicts in the evidence and to

determine the credibility of witnesses, and the resolution of such conflicts adversely to [Strickland] does not render the evidence insufficient." (Citation omitted.) *McCurdy*, supra, 359 Ga. App. at 887 (1) (c).

Additionally, Strickland's emphasis on the lack of physical evidence is unavailing. "[A]s we have explained many times before, the testimony of a single witness is generally sufficient to establish a fact, OCGA § 24-14-8, including the elements of child molestation, and physical or other corroborating evidence is not required." (Punctuation omitted.) *Tarlton v. State*, 368 Ga. App. 313, 315 (2) (890 SE2d 10) (2023). Accordingly, we conclude that the evidence, including Strickland's confession and the testimony of J. M., H. M., and B. M., supported Strickland's convictions. See *Johnson v. State*, 367 Ga. App. 108, 109 (1) (885 SE2d 77) (2023) (victim's prior recantation and the lack of physical evidence went to the weight rather than the sufficiency of the evidence).

2. Strickland reiterates his claim that the delay of 20 years in pursuing his appeal violated his due process rights. We disagree and conclude that in light of Strickland's failure to vigorously assert his rights and to demonstrate prejudice from the delay, the trial court did not abuse its discretion in rejecting this claim.

"[S]ubstantial delays during the criminal appellate process implicate due process rights." (Citation omitted.) *De La Cruz v. State*, 303 Ga. 24, 29 (6) (810 SE2d 84) (2018). Georgia courts assess an alleged due process violation based on such a delay pursuant to the four factor analysis utilized for speedy trial claims set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972). *De La Cruz*, supra, 303 Ga. at 30 (6). These four factors are "the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (Citation and punctuation omitted.) *Glover v. State*, 291 Ga. 152, 154 (3) (728 SE2d 221) (2012). In assessing such a claim, "we must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion." (Citation omitted.) *De La Cruz*, supra, 303 Ga. at 30 (6).

(a) We agree with the trial court that the delay of 20 years between Strickland's convictions and the resolution of his motion for new trial was excessive and must be weighed against the State. See *De La Cruz*, supra, 303 Ga. at 30 (6) (i) (accepting the trial court's finding that a delay of nearly 21 years between the defendant's conviction

11

and his motion for new trial hearing was excessive and needed to be weighed against the State).

(b) The trial court properly balanced the second factor, the reason for the delay, against the State. Specifically, the record does not indicate the reason for the delay, and therefore we must attribute the delay to the State, see *De La Cruz*, supra, 303 Ga. at (6) (ii), which bears "the ultimate responsibility" for managing the docket. (Citation omitted.) *Hyden v. State*, 308 Ga. 218, 224 (3) (b) (839 SE2d 506) (2020). However, because there is no indication that the delay was "designed to deliberately sabotage [Strickland's] case," this factor is not weighed particularly heavily against the State. See *De La Cruz*, supra, 303 Ga. at 31 (6) (ii).

(c) We will not disturb the trial court's decision to weigh the third factor, the defendant's assertion of his right, against Strickland. Following the initial motion for new trial, Strickland's efforts to move his case along were limited to a series of pro se filings in 2005, 2006, and 2009.[4] However, these filings apparently did not specifically assert that Strickland's due process rights had been violated by any delay, and Strickland did not take any action from 2009 until the filing of his amended motion for

---

[4] Again, these filings are not in the appellate record.

new trial in 2022, when he first asserted a due process violation. Thus, the trial court was authorized to weigh Strickland's failure to vigorously assert his appellate rights against him. See *De La Cruz*, supra, 303 Ga. at 31 (6) (iii) (because the defendant failed to assert his appellate rights for much of a 21-year delay, and he did not assert that his due process rights had been violated until new counsel amended his motion for new trial, this factor weighed heavily against him); *Glover*, supra, 291 Ga. at 155 (3) (because the defendant "failed to show that he asserted his appellate rights for much of the more than 10-year delay," and he did not assert that the delay violated his due process rights until new counsel raised the issue in his amended motion for new trial, his "failure to vigorously assert his appellate rights for several years weigh[ed] against him") (citations and punctuation omitted).

(d) The trial court properly weighed the final factor of prejudice heavily against Strickland.

> [T]he prejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced the defendant's defenses in the event of retrial or resentencing.

(Citation and punctuation omitted.) *Owens v. State*, 286 Ga. 821, 826 (2) (d) (693 SE2d 490) (2010), disapproved on other grounds, *Shelton v. Lee*, 299 Ga. 350, 356 (2) (b) n.7 (788 SE2d 369) (2016). "Appellate delay is deemed prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been different." *Owens*, supra, 286 Ga. at 826 (2) (d).

In attempting to establish prejudice in his appellate brief, Strickland merely argues that the inordinate delay and the death of trial counsel "greatly hampers any ineffective assistance of counsel claim or proof of prejudice," and that without the assistance of trial counsel it is essentially impossible to evaluate "important evidence such as the GBI interviews and Child Advocacy Center interviews of the complainants which can be seen as existing in the transcript but were not directly introduced." "However, in determining whether an appellate delay violates due process, prejudice, unlike in the speedy trial context, is not presumed but must be shown." (Citation and punctuation omitted.) *Glover*, supra, 291 Ga. at 155 (3). Strickland does not argue on appeal that counsel rendered ineffective assistance at trial,[5] and he has not shown that he has attempted but been unable to access important evidence due to the delay.

---

[5] Indeed, a review of the trial transcript shows that counsel presented a robust defense.

> [Strickland] provides no evidence of prejudice arising from the delay and does not advance any argument that the appeal he now pursues has been hampered by the delay in any way. . . . [Strickland] has failed to offer the specific evidence required to show that the delay has prejudiced his appeal or that the result of the appeal would have been different but for the delay.

(Citations and punctuation omitted.) Id.

The Supreme Court of Georgia has held that where the defendant's "only claim of prejudice [was] the bare assertion that by the passage of time counsel and witnesses' memories as to the events of the crime [were] less clear," he "failed to offer the specific evidence required to show that the delay ha[d] prejudiced his appeal or that the result of the appeal would have been different but for the delay." (Punctuation omitted.) *Loadholt v. State*, 286 Ga. 402, 406 (4) (687 SE2d 824) (2010). The Supreme Court has also rejected a claim of prejudice based on appellate delay where the defendant complained that several of the State's witnesses had died since trial, but he did not explain how the availability of those witnesses would have been relevant to his motion for new trial or appeal. *Veal v. State*, 301 Ga. 161, 168 (3) (800 SE2d 325) (2017), disapproved on other grounds, *Johnson v. State*, 315 Ga. 876, 889 (3) n.11 (885 SE2d 725) (2023). Similarly, Strickland's generalized speculation about

the effect of the unavailability of trial counsel on his appeal "is not the kind of specific evidence required to show prejudice in the appellate-delay context." See *Payne v. State*, 289 Ga. 691, 695 (2) (b) (715 SE2d 104) (2011) ("[The defendant's] generalized speculation about the delay's effect on witness memories and evidence is not the kind of specific evidence required to show prejudice in the appellate-delay context.") (citation and punctuation omitted).

Apart from his due process claim, the only claim Strickland raises on appeal is his challenge to the sufficiency of the evidence, which we rejected as meritless in Division 1 above. "[W]here, as here, we have found no merit to the other enumerations raised herein, [the defendant] cannot show prejudice." (Citation and punctuation omitted.) *Hyden*, supra, 308 Ga. at 226 (3) (d). "This is so because there can be no prejudice in delaying a meritless appeal." (Citation and punctuation omitted.) Id. Accordingly, "[t]he record supports the motion for new trial court's finding that [Strickland] failed to adduce any evidence to show actual prejudice to [his] ability to assert his arguments on appeal so that there is a reasonable probability that, but for the delay, the result of this appeal would have been different." (Citation and punctuation omitted.) *De La Cruz*, supra, 303 Ga. at 31 (6) (iv).

16

Based on the foregoing, we conclude that the delay in resolving Strickland's motion for new trial did not violate his right to due process. Specifically, "it was incumbent upon the trial court to find no constitutional error given [Strickland's] long delay in asserting his right . . . and his failure to demonstrate prejudice." (Citation omitted.) *De La Cruz*, supra, 303 Ga. at 31 (6). "[W]e do not approve of the delay occasioned here," id. (citation omitted), and we "reiterate that it is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay." *Shank v. State*, 290 Ga. 844, 849 (5) (c) (725 SE2d 246) (2012). Nonetheless, we conclude that the trial court did not abuse its discretion in ruling that Strickland's due process claim must fail.

Accordingly, we affirm Strickland's convictions and sentence and the denial of his motion for new trial.

*Judgment affirmed. Markle & Land, JJ., concur.*