## A07A2111. WILLIAMS v. THE STATE.
### (658 SE2d 446)

ADAMS, Judge.

Daniel L. Williams was convicted of aggravated sodomy and rape in 1983, and was sentenced to life imprisonment. This Court affirmed his conviction in 1985 in an unpublished opinion.[1] Twenty years later, on November 14, 2005, Williams filed a pro se motion for DNA testing pursuant to OCGA § 5-5-41 (c). The trial court denied that motion following an evidentiary hearing, and Williams appeals.[2] We affirm.

Under OCGA § 5-5-41 (c) (1), a party convicted of a serious violent felony may file a post-conviction motion for DNA testing. The statute requires that the petitioner verify the motion and make certain affirmative showings in order to obtain relief. OCGA § 5-5-41 (c) (3). Thus Williams was required to show, inter alia, that:

(A) Evidence that potentially contains . . . [ ]DNA[ ] was obtained in relation to the crime . . . which resulted in his . . . conviction;

(B) The evidence was not subjected to the requested DNA testing because the existence of the evidence was unknown to the petitioner or to the petitioner's trial attorney prior to trial or because the technology for the testing was not available at the time of trial;

(C) The identity of the perpetrator was, or should have been, a significant issue in the case;

(D) The requested DNA testing would raise a reasonable probability that the petitioner would have been acquitted if the results of DNA testing had been available at the time of conviction, in light of all the evidence in the case. . . .

OCGA § 5-5-41 (c) (3).

Williams was not entitled to obtain DNA testing unless he met these statutory requirements. *Crawford v. State*, 278 Ga. 95, 97-99 (2) (b) (597 SE2d 403) (2004). Williams appears to have complied in substantial part with at least the first two of these requirements.[3] The motion asserts that a Georgia Bureau of Investigation Division

---

[1] *Williams v. State*, 177 Ga. App. XXX (Case No. 71168, decided December 3, 1985).

[2] We note that the State did not file any briefs in this matter.

[3] While the motion contained no specific language of verification, Williams's signature on the motion was notarized. We will assume, without deciding, that this satisfied the verification requirements of the statute, so that we may address the merits of his motion.

of Forensic Sciences report dated January 17, 1987, revealed that pubic hair and seminal fluid containing sperm were collected in his case. Williams further states that the issue of DNA evidence was not raised at his trial and that no DNA testing was ordered on this evidence. This assertion is supported by the trial transcript and the GBI report, which does not reflect that any such testing was conducted. While the motion does not specifically recite that the existence of this evidence was unknown to Williams and his attorney at trial as required by the statute, he stated at the evidentiary hearing that the GBI report did not become available until some two years after his trial. And we note that the GBI report is dated nearly four years after his trial.

But Williams cannot demonstrate that the other statutory requirements were met. Williams argued at the evidentiary hearing that if the jury had known there was only one strand of hair recovered, they would not have been able to make a complete identification of him as the perpetrator as there was no physical evidence linking him to the crime. But an examination of the evidence at Williams's trial demonstrates that the identity of the perpetrator was never in dispute.

The victim testified that on June 25, 1983, she was in Atlanta to attend a jazz festival with the man she was dating. They met Williams and accepted his offer to drive them home to Alabama. On the way, Williams dropped the victim's date at a store to buy beer, then drove the victim to a nearby park where he forcibly pulled her from the car, chased her through the park when she managed to get away, dragged her back to the car and forced her to submit to oral and vaginal sex. Afterward, he told her that he would drive her to Alabama, but he did not go back to pick up her date. En route to Alabama, Williams stopped at a Villa Rica truck stop to allow the victim to use the restroom. Instead, she entered the truck stop and asked for help. Police were summoned after she said that she had been kidnapped and raped. A witness who worked in the truck stop testified that the victim was shaking, had dirt and debris on her clothing, and was "skinned up." The police officer who responded to the call found the victim crouched behind some kitchen equipment. He later observed "raw abrasions and deep bruises" on her skin. She told the officer that she was still with the man who had kidnapped her from a concert in Atlanta and raped her.

Williams approached the officer when he came out of the kitchen and said that he thought the victim was going to "frame" him. He told the officer that the victim's boyfriend had tried to sell her to him, but he "didn't want any part of it." The officer contacted the Atlanta police to report the alleged crimes, and then transported both Williams and the victim to the Villa Rica police station. At the police station,

Williams volunteered to the Villa Rica officer that he had had sexual intercourse with the victim, but said that he paid for it. Later, after receiving *Miranda* warnings, Williams told the Atlanta police that he had sex with the victim in a park in Atlanta, and had paid her for it. The state also presented evidence at trial of two prior similar transactions. Williams testified that he had consensual sex with the victim at her instigation, and that he paid her for it. He also produced evidence that he had successfully passed a polygraph examination.

It is clear from this evidence that the identity of the perpetrator was not a significant issue at his trial. From the night of the incident, Williams voluntarily admitted that he had sex with the victim. Instead, the pivotal issue in this case was whether the victim consented to that sexual intercourse. Even assuming, therefore, that the results of the DNA tests did not link the evidence to Williams, such findings, if they had been available at this trial, would not in reasonable probability have led to his acquittal, and the trial court properly denied his motion for DNA testing. *Crawford v. State*, 278 Ga. at 99 (2) (b).

Williams's counsel argues for the first time on appeal, however, that the test results would have affected the outcome of the trial because he would not have testified and admitted to having sexual intercourse with the victim if the DNA tests showed the evidence belonged to someone else. Pretermitting the issue of whether this argument was preserved for appellate review, we find that it is meritless. Even if Williams had not testified, the state would have introduced evidence from both the Villa Rica and the Atlanta police that he admitted having sex with the victim. Accordingly, even without his testimony, identity would not have been a significant issue at the trial.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 29, 2008 ▮▮▮▮▮▮▮▮▮▮▮

*Stephen R. Scarborough*, for appellant.
*Paul L. Howard, Jr., District Attorney*, for appellee.