**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 5, 2019**

# In the Court of Appeals of Georgia

A19A1023. LEWIS v. THE STATE.

BROWN, Judge.

Following a jury trial, Kenneth Charles Lewis was convicted of child molestation, rape, and two counts of aggravated sodomy in connection with the repeated sexual abuse of his then fourteen-year-old step-daughter. On appeal, Lewis argues that the trial court erred in denying his amended motion for new trial because (1) the verdict was contrary to law, justice, equity, and the evidence and without evidence to support it and (2) trial counsel provided ineffective assistance for a number of reasons. Lewis also appeals the denial of his motion for testing of evidence. For the reasons that follow, we find no error and affirm.

1. "On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to

the guilty verdict." (Citation and punctuation omitted.) *Anderson v. State*, 348 Ga. App. 322 (822 SE2d 684) (2018). So viewed, the evidence adduced at trial shows that Lewis served 25 years in prison after being sentenced to two life sentences for murder and armed robbery. After being paroled and released, Lewis met the victim's mother online, and he moved into the home where the victim lived with her mother. Lewis and the victim's mother married in 2010. Sometime during the summer of 2011, Lewis exposed himself to the victim, then began touching her over her clothing, and eventually, under her clothing. The touching escalated to vaginal, anal, and oral penetration. The victim testified that she was frightened of Lewis because he told her he had decapitated a man. In addition, if the victim refused Lewis' advances, he would slam doors and "kick the animals."

The victim first disclosed the abuse to a friend. Subsequently, the victim and the friend were alone at Lewis' workplace when Lewis inappropriately touched the friend in front of the victim. Lewis stopped when the friend began to cry and the victim yelled at him. Lewis' abuse continued regularly until 2014, when Lewis started drinking himself to sleep every night and the victim's mother divorced him.

After Lewis and the victim's mother divorced in 2014, the victim revealed to her mother that Lewis had sexually abused her. The mother contacted police, and an

investigator spoke with the victim at her home with her mother present. During two forensic interviews, the victim disclosed and described Lewis' regular and repeated sexual abuse. The victim also underwent a physical examination, which did not yield any injuries or unusual findings. However, the examining physician testified that it was not surprising for the victim to have a normal exam six months after any trauma occurred. Lewis testified at trial and denied all of the allegations. Although Lewis does not dispute the sufficiency of the evidence, we conclude that it was sufficient to authorize a rational jury to find beyond a reasonable doubt that Lewis was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. In several enumerations of error, Lewis argues that the trial court erred in denying his amended motion for new trial because the verdict was "contrary to law, justice, and equity," and "contrary to the evidence and without evidence to support it." See OCGA § 5-5-20. However, the power to grant a new trial on the general grounds lies with the trial court alone. See *Celestin v. State*, 296 Ga. App. 727 (1) (675 SE2d 480) (2009).

> Trial courts have discretion to grant a new trial on these grounds — commonly known as the "general grounds"— but appellate courts do

not. Our review is limited to the legal sufficiency of the evidence. Indeed, even when asked to review a trial court's refusal to grant a new trial on the general grounds, this Court must review the case under the standard set forth in *Jackson v. Virginia*. . . .

(Citations and punctuation omitted.) *Plez v. State*, 300 Ga. 505, 507 (1), n.2 (796 SE2d 704) (2017). As we explained in Division 1, supra, the evidence in this case meets the standard for legal sufficiency.[1]

3. Lewis next argues that his trial counsel provided ineffective assistance for a number of reasons.

> To prevail on a claim of ineffective assistance of counsel, [Lewis] must show that trial counsel's performance was so deficient that it fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the defense such that a reasonable probability exists that the trial results would have been different but for counsel's performance. *Strickland v. Washington*, 466 U. S. 668 (II) (104 SCt 2052, 80 LE2d 674) (1984).

---

[1] Lewis does not argue that the trial court failed to properly exercise its discretion to consider a new trial on the general grounds. Nevertheless, we find that the trial court has in the exercise of its discretion approved the verdict. See *Murdock v. State*, 299 Ga. 177, 178 (2) (787 SE2d 184) (2016); *Butts v. State*, 297 Ga. 766, 771-772 (3) (778 SE2d 205) (2015).

4

*Bragg v. State*, 295 Ga. 676, 678 (4) (763 SE2d 476) (2014). "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *Brown v. State*, 321 Ga. App. 765, 767 (1) (743 SE2d 452) (2013).

(a) Lewis argues trial counsel was ineffective by not pursuing avenues of potentially exculpatory evidence. Shortly before trial began, a defense investigator gave trial counsel a report noting that Lewis claimed he had scarring on his testicles from surgery and that his ejaculate contained blood. Neither the State nor the defense brought up this information at trial. According to Lewis, trial counsel should have "explored whether [these] claims were true, and if so, whether any of the State's witnesses[, including the victim,] were capable of verifying [this]." We first note that the investigator's report to which Lewis refers is not included in the record before this Court. Nevertheless, assuming the report states what Lewis claims, we find no merit in his argument.

When questioned about the report during the motion for new trial hearing, trial counsel testified that even if Lewis' claims could have been verified and he had

questioned the victim about the scarring and bloody ejaculate, any answer she gave would not have helped the defense:

> She could have confirmed [the scarring and bloody ejaculation], yes. Or she could have simply said she never saw that. Either way would not have helped us, I don't think.

Trial counsel also agreed that had the victim confirmed the information in some way, it certainly would have harmed Lewis. "Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that [Lewis] and his present counsel disagree with the decisions made by trial counsel does not require a finding that [Lewis'] original representation was inadequate." (Citation and punctuation omitted.) *Smith v. State*, 304 Ga. App. 846, 848 (698 SE2d 355) (2010). Trial counsel's decision not to verify or utilize this information at trial was "a strategic or tactical decision by trial counsel and therefore does not constitute ineffective assistance of counsel absent a contrary showing." (Citation and punctuation omitted.) *Pippins v. State*, 263 Ga. App. 453, 458 (4) (a) (588 SE2d 278) (2003).

(b) Lewis argues trial counsel was ineffective for failing to voir dire the State's two expert witnesses. However, apart from stating that trial counsel did not voir dire

6

Dr. Tamika Bryant, who was offered and admitted as an expert in child abuse pediatrics, Lewis fails to provide citation to authority or any meaningful argument as to Dr. Bryant. Other than this single sentence, the remainder of Lewis' two-page-plus argument is devoted to the State's other expert witness. Under the particular facts and circumstances of this case, Lewis' argument in regard to Dr. Bryant has been abandoned. See *Brittain v. State*, 329 Ga. App. 689, 691, n.4 (766 SE2d 106) (2014).

The State's other expert witness, Anique Whitmore, did not examine the victim, but testified generally about sexual abuse, its effects, and the process of forensic interviewing. Whitmore testified that she is a psychotherapist licensed to practice in Georgia and had operated her own private practice for seven years at the time of trial. She testified that prior to being in private practice she was the director of forensic services for the Fulton County District Attorney's office. Contrary to Lewis' assertions that "the jury [was] never told what [the title] actually means," Whitmore testified extensively as to what she did in that capacity. Prior to holding that position, Whitmore testified, she was the clinical and executive director of Harbor House, a child advocacy center where child victims of sex crimes were forensically interviewed. Whitmore testified that she has an undergraduate degree in education and social policy and a master's degree in counseling psychology, both

from Northwestern University. Finally, Whitmore explained that she had been appointed by the governor of Georgia to a committee responsible for education on child forensic interview protocol.

Lewis asserts that trial counsel should have asked Whitmore for definitions of "psychotherapy" and "constant psychology," Whitmore's undergraduate minor. Additionally, Lewis asserts that trial counsel should have ascertained the professional accreditations of the professional bodies Whitmore had worked for and whether Whitmore had done any research or authored any papers on child abuse. Further, according to Lewis, trial counsel should have "inquired into Ms. Whitmore's transcripts in college and graduate school, whether she was a straight 'A' student or had graduated at the bottom of her class."

During the hearing on Lewis' motion for new trial, trial counsel testified that he did not voir dire Whitmore because she discussed herself and her qualifications at length on direct examination and that voir diring her "would have continued to emphasize her qualifications" to the jury. Trial counsel chose to move on because he "wanted to get her to stop talking about herself."

"The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Citation and punctuation omitted.) *Smith*, 304 Ga. App. at 848. Moreover,

> how to deal with the presentation of an expert witness by the opposing side, including whether to present counter expert testimony, to rely upon cross-examination, to forego cross-examination and/or to forego development of certain expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis for a successful ineffective assistance of counsel claim.

(Citation and punctuation omitted.) *Brown v. State*, 292 Ga. 454, 456-457 (2) (738 SE2d 591) (2013).

We conclude that trial counsel's strategic decision not to continue questioning Whitmore about her qualifications was not unreasonable and did not constitute deficient performance. The record shows that trial counsel instead chose to thoroughly cross-examine Whitmore, and elicit testimony that she was paid by the prosecution for her trial testimony and that the majority of the times she had previously testified as an expert, it was for the prosecution. Accordingly, Lewis' ineffective assistance of counsel claim on this ground cannot be sustained. See *Phillips v. State*, 285 Ga. 213, 222-223 (5) (i) (675 SE2d 1) (2009). See also *Brown*,

9

292 Ga. at 456-457 (2) (trial counsel's strategic decision to challenge State's expert on cross-examination rather than calling a defense expert was not deficient performance).

(c) Lewis also argues that trial counsel was ineffective for failing to object to the State's leading questions during the testimony of the victim, the victim's mother, the friend to whom the victim disclosed the abuse, and the police officer who responded when the mother contacted the police. In support of his argument, Lewis cites several instances of such questioning, arguing that the leading questions caused harm because they "touched crucial issues directly or indirectly affecting [his] guilt or innocence . . . as well as coloring the circumstances . . . so as to inflame the jury against him." Again, we disagree.

At the motion for new trial hearing, trial counsel testified that whether he objects to leading questions depends on the situation:

> if it appears to me the jury is getting bored, or they don't like the person, or it's something that I want to bring up to make a point later, I would let it continue. If it were something that I thought that would damage — that was damaging to the client, I would object, but I don't have a bright line [rule]. Sometimes I do let it go because I think it's helping us.

10

The record reflects that trial counsel did object to some leading questions posed by the prosecutor.

"[D]ecisions regarding when and how to raise objections are generally matters of trial strategy, and such strategic decisions do not constitute deficient performance unless they are so patently unreasonable that no competent attorney would have chosen them." (Citations and punctuation omitted.) *Sowell v. State*, 327 Ga. App. 532, 540 (4) (a) (759 SE2d 602) (2014). "Indeed, the decision not to object to leading questions is often the result of reasonable trial strategy. And given that [Lewis] has not made a contrary showing in this regard, he has failed to demonstrate that his trial counsel performed deficiently." (Citation and punctuation omitted.) *Howard v. State*, 340 Ga. App. 133, 142 (3) (c) (796 SE2d 757) (2017). See also *Jones v. State*, 302 Ga. 488, 492 (2) (a) (807 SE2d 344) (2017). Thus, Lewis' argument in this regard is without merit, and the trial court did not err in denying his amended motion for new trial.

4. Lastly, Lewis argues that the trial court erred in denying his request to test a washcloth recovered from the victim's underwear drawer for DNA. The victim testified that Lewis usually ejaculated onto a washcloth and that he used a washcloth "to wash off before [he] started, and a dry [washcloth] for when he finished." After

11

the victim disclosed the abuse to her mother and the police, the mother informed police that she had found a purple washcloth in the back of the victim's underwear drawer. A detective retrieved the washcloth from the victim's dresser drawer, noting that it was "folded up or kind of wadded up in the very back corner of the drawer." The detective testified that the mother informed him that the washcloth had been washed and that the Georgia Bureau of Investigation's crime lab informed him that "it would hold no evidentiary value because of the fact that, any evidence would have long been gone at that point." The washcloth was collected roughly six months after the last incident of abuse.

After the trial, Lewis filed a motion for testing of evidence, asking the trial court to order police to turn over the washcloth to the Georgia Bureau of Investigation for DNA testing. Along with the motion, Lewis filed an article from a scientific journal titled "Persistence of DNA from laundered semen stains: Implications for child sex trafficking cases." Following a hearing on Lewis' motion, the trial court entered an order for preservation of the washcloth. In its order denying Lewis' amended motion for new trial, the trial court found that Lewis had "failed to make a showing to support the testing of evidence in this case," and also denied Lewis' motion for testing of evidence.

On appeal, Lewis argues that the trial court erred in denying his request for testing of the washcloth. OCGA § 5-5-41 (c), the statute that controls motions for post-conviction DNA testing, states, in part, that

(1) . . . a person convicted of a felony may file a written motion before the trial court that entered the judgment of conviction in his or her case for the performance of forensic deoxyribonucleic acid (DNA) testing.

. . .

(3) The motion shall be verified by the petitioner and shall show or provide the following:

(A) Evidence that potentially contains deoxyribonucleic acid (DNA) was obtained in relation to the crime and subsequent indictment, which resulted in his or her conviction;

(B) The evidence was not subjected to the requested DNA testing because the existence of the evidence was unknown to the petitioner or to the petitioner's trial attorney prior to trial or because the technology for the testing was not available at the time of trial;

(C) The identity of the perpetrator was, or should have been, a significant issue in the case;

(D) The requested DNA testing would raise a reasonable probability that the petitioner would have been acquitted if the results of DNA testing had been available at the time of conviction, in light of all the evidence in the case[.]

13

Id. Lewis "may be entitled to post-conviction DNA testing if he meets all of the statutory requirements listed in OCGA § 5-5-41 (c) (3), (4), and (7). See OCGA § 5-5-41 [(c)] (6) (A) and (7)[.]" (Citations and footnote omitted.) *De La Cruz v. State*, 303 Ga. 24, 32 (7) (810 SE2d 84) (2018).

Here, Lewis cannot demonstrate that any of the statutory requirements were met. First, it is undisputed that Lewis and his trial counsel knew about the washcloth prior to trial. See OCGA § 5-5-41 (c) (3) (B). And while Lewis submitted an article which purportedly shows that DNA profiles can be obtained from laundered semen stains, Lewis has not shown that the actual technology for the testing of the washcloth was not available at the time of trial. Id.

Next, the identity of the perpetrator of the abuse was not a significant issue at trial. See OCGA § 5-5-41 (c) (3) (C). Instead, the pivotal issue in the case was whether the sexual abuse alleged by the victim occurred at all. Lewis asserts that if another person's DNA were to be recovered from the washcloth, it would constitute potentially exculpatory evidence. But nothing in the record supports the possibility that another male perpetrated the acts; and no other male lived in the home. Under these particular facts and circumstances, Lewis has not "show[n] the relevance of [this] hypothetical result." (Punctuation omitted.) *Crawford v. State*, 278 Ga. 95, 97

14

(2) (a) (597 SE2d 403) (2004). See also *Williams v. State*, 289 Ga. App. 856, 858 (658 SE2d 446) (2008).

Finally, Lewis' motion for testing of the washcloth failed to meet OCGA § 5-5-41 (c) (3) (D). At trial, the jury was informed that the washcloth had been washed. Further, the victim testified that the recovered washcloth was "unused." Thus, even if the washcloth had been tested — assuming it had any evidentiary value — and Lewis' DNA was not recovered from the washcloth, it would only show an absence of Lewis' DNA from a laundered and/or unused washcloth. In light of this as well as all of the evidence presented at trial, Lewis failed to show a reasonable probability that he would have been acquitted had the DNA results been available at the time of trial. See OCGA § 5-5-41 (c) (3) (D). See also *De La Cruz*, 303 Ga. at 33 (7); *Williams*, 289 Ga. App. at 858. Accordingly, the trial court did not err in denying Lewis' post-conviction motion for DNA testing of the washcloth.

*Judgment affirmed. Barnes, P. J., and Mercier, J., concur.*