**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 25, 2021

# In the Court of Appeals of Georgia

A21A0618. MINCEY v. THE STATE.

REESE, Judge.

In 1996, three men drove a stolen Chevrolet Caprice to a Chatham County pawn shop, where they tied up two employees at gunpoint and robbed the store.[1] Roberto Mincey received a life sentence following his conviction of two counts each of armed robbery, kidnapping, and possession of a firearm during the commission of a crime, and one count each of theft by receiving stolen property and possession of a firearm by a convicted felon.[2] In 2017, Mincey filed a motion for deoxyribonucleic acid ("DNA") testing under OCGA § 5-5-41, of five latex gloves recovered by police

---

[1] *Mincey v. State*, 237 Ga. App. 463, 465 (2) (515 SE2d 433) (1999).

[2] See OCGA §§ 16-8-41 (a); 16-5-40 (a); 16-11-106 (b) (1); 16-8-8; 16-11-131 (b).

in connection with the robbery. For the reasons set forth infra, we vacate the trial court's order denying Mincey's motion and remand for further proceedings.

Twenty years after we affirmed Mincey's convictions on direct appeal,[3] Mincey filed a motion for post-conviction DNA testing of four latex gloves recovered from the stolen Caprice shortly after the robbery and a fifth glove recovered two days later from a Buick LeSabre owned by Mincey's codefendant, James Kimble.[4] At a hearing on the motion, Mincey presented evidence from a DNA expert, who testified that advances in DNA testing had made it possible to develop a DNA profile from latex gloves. The trial court allowed the parties additional time to submit post-hearing briefs. Mincey's attorney filed an affidavit, attesting that, the day after the hearing, he had reviewed the contents of the official court file, which included the exhibits introduced into evidence at Mincey's trial and, specifically, the latex gloves. The attorney further testified that the clerk did not allow him to take pictures of the evidence or to have any further access without a court order.

---

[3] See *Mincey*, 237 Ga. App. at 464 (1).

[4] The motion also sought DNA testing of duct tape found at the pawn shop, but Mincey concedes on appeal that the tape is not available.

The trial court denied Mincey's motion, finding that counsel's "affidavit at best establishe[d] the gloves exist[ed] but [did] not establish that [the evidence was] in a condition to be tested or that it m[et] the chain of custody requirement." The court found that Mincey "ha[d] also failed to show that the requested DNA testing would raise a reasonable probability that he would have been acquitted if the results of DNA testing had been available at the time of conviction in light of all the evidence in the case." The court rejected Mincey's argument that it would be reliable evidence if three profiles on the gloves did not match Mincey's DNA profile. The court found "there [was] no evidence that [Mincey] was the specific defendant wearing the gloves[.] In addition, the gloves at issue were found in two different vehicles and away from the crime scene and . . . other individuals were involved in the cover-up." The court added that, "while identity was an issue, both victims in the case repeatedly identified [Mincey]."

"[F]actual findings under OCGA § 5-5-41 (c) will be upheld by this Court unless they are clearly erroneous, but this Court will independently apply the DNA statute to the trial court's findings."[5] With these guiding principles in mind, we turn now to Mincey's claims of error.

---

[5] *White v. State*, 346 Ga. App. 448, 452 (1) (814 SE2d 447) (2018).

3

Mincey argues that the trial court erred in denying his motion because he established that the latex gloves were available, and that there was a reasonable probability of a different result at trial had exculpatory DNA results been presented.

Under OCGA § 5-5-41 (7), the court "shall" grant a motion for DNA testing if it determines that the petitioner has met the requirements set forth in paragraphs three and four and that certain criteria has been established, including, inter alia: "The evidence to be tested is available and in a condition that would permit the DNA testing requested in the motion; [and the] evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect[.]"[6]

Here, it is undisputed that the clerk of court had possession of the latex gloves, that the three exhibits consisting of the four gloves seized from the stolen Caprice were contained in separate envelopes, and that the clerk would not allow Mincey's attorney either to take photographs of the evidence or to access them further. According to his affidavit, Mincey's attorney reviewed the contents of the official court file under a deputy clerk's supervision and confirmed that Exhibits 46, 47, 48,

---

[6] OCGA § 5-5-41 (7) (A), (B).

4

and 106 "still exist[ed] and [were] in the official court file of this case which [was] maintained by the Clerk of the Superior Court of Chatham County."

At Mincey's trial, the trial court had admitted these exhibits into evidence during the testimony of the officers who had collected them. Specifically, Detective Donald Thompson testified that he collected a pair of latex gloves from the floorboard of the stolen Caprice (Exhibit 46), a single glove from the front seat of that vehicle (Exhibit 47), and a single glove found on the ground nearby (Exhibit 48).

Sergeant John Best testified that he executed a search warrant on James Kimble's Buick LeSabre two days after the robbery, and Best recognized Exhibit 106 as "[a] brown paper grocery bag [the police department] commonly use[d] to log evidence into the property room with." Best identified his handwriting on the bag, which he testified:

> list[ed] four pillowcases as item number 1. Item number 2, one blue laundry bag; 3, one surgical glove; 4, two pieces of speaker wire; 5, torn piece of letter from [the District Attorney's] Office. . . . The pillowcases and the blue laundry bag . . . matche[d] . . . or implicate[d] what the witnesses said the robbers used when they robbed the pawn shop to carry the evidence off with. [A]nd the surgical glove, which . . . was still sealed in an envelope . . . matche[d] again what witnesses . . . told [the] detectives that the robbers wore when they robbed the pawn shop."

5

We conclude that the trial court erred in finding that the "affidavit at best establishe[d] the gloves exist[ed] but [did] not establish that [the evidence was] in a condition to be tested[.]" Mincey's expert testified at the motion hearing that "a specific kit called mini-STR [short tandem repeat] testing . . . became available in 2007, and that allow[ed testing] for DNA that ha[d] broken down or . . . degraded over time." Specifically, although DNA might break down "due to storage conditions," the newer kits made it possible to still develop a DNA profile. Based on the attorney's affidavit and the expert testimony, the trial court erred in finding that the latex gloves were not available and in a condition that would permit the DNA testing requested in the motion.[7] The trial court further erred in finding that the evidence to be tested was not subject to a sufficient chain of custody as nothing in the record suggests tampering.[8]

---

[7] See OCGA § 5-5-41 (7) (A); *White*, 346 Ga. App. at 455.

[8] See *Winter v. State*, 252 Ga. App. 790, 791 (2) (557 SE2d 436) (2001) ("To show a chain of custody adequate to preserve the identity of fungible evidence [in a criminal trial], the State has the burden of proving with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not foreclose every possibility of tampering, however, and need only show 'reasonable assurance' of the identity of the evidence. Moreover, in the event no showing of tampering has been made and only a bare speculation of possible tampering exists, the chain of custody is not broken and the evidence is admissible, with any doubts going to its weight.") (citations omitted).

6

Finally, the trial court erred in finding that Mincey failed to show that the requested DNA testing would raise a "reasonable probability" of acquittal.[9] The trial court noted that identity was an issue at trial, but pointed out that both victims in the case had repeatedly identified Mincey. However, there were factors present that undermined the reliability of the victims' identification.[10]

Although the trial court correctly noted that the gloves were found at two different vehicles away from the crime scene, four of the gloves (one pair and two singles) were found in and near the stolen Caprice shortly after the robbery. In his motion, Mincey argued that three unique DNA profiles from the gloves that did not match his profile would be "reliable evidence" that he was not one of the robbers.

---

[9] See OCGA § 5-5-41 (c) (3) (D) (requiring that the motion show that "[t]he requested DNA testing would raise a reasonable probability that the petitioner would have been acquitted if the results of DNA testing had been available at the time of conviction, in light of all the evidence in the case[ ]").

[10] See *Brodes v. State*, 279 Ga. 435, 441 (614 SE2d 766) (2005) (discussing factors highlighted by a Florida appellate court that make eyewitness identification unreliable); see also *Crawford v. State*, 278 Ga. 95, 99-100 (1) (597 SE2d 403) (2004) (Fletcher, C. J., dissenting) ("In providing for [the post-conviction DNA testing] process, the Georgia legislature was responding to a national concern about innocent persons being wrongfully convicted and newly available DNA testing that could right those previous wrongs.") (footnote omitted).

Although the evidence at trial was sufficient to convict Mincey,[11] the trial court erred in concluding that exculpatory DNA results from the gloves would not raise a reasonable probability that he would have been acquitted had the evidence been available.[12] While there may have been other individuals involved after the robbery, there was no evidence at trial that there were more than three men who arrived at the pawn shop in the Caprice, robbed the pawn shop, and left in the Caprice. In light of all the evidence in the case,[13] the hypothetical results of the requested DNA testing raise a reasonable probability that Mincey would have been acquitted if the results had been available at the time of conviction. Accordingly, we vacate the trial court's order denying his motion for testing and remand for further proceedings.

*Judgment vacated and case remanded. Doyle, P. J., and Brown, J., concur.*

---

[11] See *Mincey*, 237 Ga. App. at 464-465 (2).

[12] Cf. *Williams v. State*, 289 Ga. App. 856, 858 (658 SE2d 446) (2008) (affirming denial of DNA testing because identity was not a significant issue at trial where the defendant voluntarily admitted that he had sex with the victim).

[13] See OCGA § 5-5-41 (c) (3) (D).