314 Ga. 193
FINAL COPY

S22A0603.  BROWN v. THE STATE.

LAGRUA, Justice.

At a trial in August 2016, a Berrien County jury found Appellant Kelvin Brown guilty of malice murder and other crimes related to the shooting death of Cornelius Miller.  He now appeals, contending that: (1) the evidence was insufficient to support his convictions; (2) the prosecutor failed to lay a proper foundation before the trial court allowed him to treat witness Tyeesha Gray as a hostile witness; and (3) the trial court erred in allowing two witnesses to testify despite lacking personal knowledge about the shooting.  For the reasons that follow, we see no error and therefore affirm.[1]

---

[1] The shooting occurred on March 15, 2014.  On May 11, 2015, a Berrien County grand jury indicted Appellant for malice murder, felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  At a trial from September 26 to 27, 2016, a jury found Appellant guilty of all five counts.  The trial court

Viewed in the light most favorable to the jury's verdicts, the evidence at trial showed that at approximately 2:00 a.m. on March 15, 2014, Officer Kevin Purvis of the Nashville Police Department heard people shouting for assistance. Officer Purvis arrived at the parking lot of Guthrie Motors in Nashville, where he saw Miller lying face down, still breathing, with blood on his body. Officer Purvis called for police assistance and an ambulance and began to manage the crowd that had gathered. Eventually, additional officers arrived to assist, including Chief of Police Kenneth Eaton.

Chief Eaton testified that when he arrived, he acted as crowd control in an attempt to secure the crime scene. During this time, witness Tyeesha Gray "continued to be loud in the crowd." Chief Eaton put Tyeesha in the back of Officer Purvis's patrol car because "she was being loud and really causing more of a scene than anyone

sentenced Appellant to serve life in prison for malice murder and five years consecutive for each of the two firearm counts for a total sentence of life in prison plus ten years. The remaining counts were merged for sentencing purposes or vacated by operation of law. On September 29, 2016, Appellant filed a motion for new trial, which he amended on October 15, 2021. After a hearing, the trial court denied Appellant's motion for new trial on December 3, 2021. Appellant then filed a timely notice of appeal, and the case was docketed to this Court's April 2022 term and submitted for a decision on the briefs.

else at that time." Shortly thereafter, EMS personnel arrived, and Miller was taken to the Berrien County emergency room, where he died.

Detective Fred Busbin interviewed Tyeesha at the crime scene, and she told him that she saw Appellant shoot Miller. Detective Busbin later obtained a security camera recording from the owner of Guthrie Motors. The video recording, which was played for the jury, showed a man running toward Guthrie Motors in a "zigzag pattern," from the Blue Club,[2] which was down the street. The man then collapsed between two vehicles in the parking lot of Guthrie Motors. After reviewing the video recording, Detective Busbin re-interviewed Tyeesha and interviewed her twin sister, Nyeesha, at the police department. He testified that Tyeesha gave him the same account as what she recounted at the crime scene.[3] Detective Busbin then sought and obtained an arrest warrant for Appellant.

---

[2] Multiple witnesses testified that the Blue Club was known by multiple names, including the Blue Swan and the Blue Flame.

[3] Detective Busbin did not testify as to what Nyeesha told him at the police department.

Later, Detective Busbin received a phone call from Sherry Keefe, the mother of Appellant's girlfriend, Amanda Ballard. Keefe told Detective Busbin that Ballard was with Appellant at their home on the night after the shooting, that Ballard was obtaining a change of clothes for Appellant, and that Ballard was planning to take Appellant somewhere to hide. In a second, later phone call, Keefe told Detective Busbin that Ballard was on her way to Cecil, Georgia to check on Appellant. Through Keefe, Detective Busbin obtained cell phone numbers for Ballard and Appellant. Detective Busbin asked Berrien County 911 dispatchers to "ping" the phone numbers,[4] which told Detective Busbin where the phones were approximately located. Law enforcement officers called hotels in the area of the phones' location and discovered that Ballard had rented a room at a motel in Cecil on the night of March 16 (the night after the shooting).

---

[4] Detective Busbin testified that "pinging" the phone numbers "doesn't give really any information from the phone, it just . . . locates where the phone is." Jamie Karnes, a Special Agent with the Georgia Bureau of Investigation, also testified that 911 dispatchers "have the ability to send out a signal . . . as if it were calling [a particular] phone but not . . . activate the phone to ring or vibrate," which allows dispatchers to get a rough idea of where a particular phone is located.

Detective Busbin and other law enforcement officers surveilled the motel and arrested Appellant on Monday, March 17 around 2:30 a.m. There were no weapons found in the motel room.

The medical examiner testified that Miller died from a gunshot wound to his chest. A .38-caliber bullet recovered from Miller's body was submitted to a firearms expert, who testified that the bullet was consistent with being fired from a "Smith & Wesson .357 Sig pistol." Crime scene investigators recovered 12 shell casings from the scene, and the firearms expert testified that the casings were consistent with being fired from the same type of gun. The police did not recover the firearm used in the murder.

At trial, Roanda Scott testified that he was sitting in his car in the Blue Club's parking lot when he saw Appellant walk past while holding a handgun in his right hand. Scott heard multiple gunshots, then saw Appellant walk back past Scott's vehicle again still holding a gun. Scott left, called 911, and was later interviewed by Detective Busbin. According to Detective Busbin, Scott recounted that he saw Appellant "come by with a gun, saw him shoot Cornelius Miller, that

5

[Appellant] ran one way, [and] Miller ran the other way."

Ballard testified that after the crime, Appellant called her and stated that "he had killed Prick." Ballard also received a text message from a number associated with Appellant that said he had "killed somebody and that he needed [Ballard] to come get him." Ballard picked up Appellant and took him to retrieve money from some friends. According to Ballard, Appellant needed the money in order to "get a bus and get out of town" because "he killed a person, Prick." Ballard then took Appellant to a motel in Cecil, where she rented a room under her name and stayed with him. While at the motel room, Appellant admitted to Ballard that he shot Miller because Miller had called him a "pu**y a** ni**a," which embarrassed him. Appellant also told Ballard that he "[got] rid of the gun and that it would never be found."

The Gray sisters both testified at trial, but they each asserted that parts of their recollection of the events were based on hearsay. Tyeesha testified that she was present at the Blue Club on the night of the shooting and saw Miller get shot. Prompted by leading

questions, she also testified that she told police that she saw Appellant shoot someone named "Prick."[5] Nyeesha testified that she saw Miller at the Blue Club on the night of the shooting and as she was leaving the club, she heard multiple gunshots. Nyeesha further testified that, after the shooting, she went to the Nashville Police Department and told officers that she saw Appellant shoot Miller.

1. Appellant contends that the evidence was insufficient, given that the Gray sisters' testimony was ostensibly based on hearsay and Scott's testimony did not reflect that the gun Scott saw Appellant carrying was in fact the murder weapon. Accordingly, Appellant argues, the State's entire case was based on circumstantial evidence, which failed to rule out the possibility that someone else was the shooter. See OCGA § 24-14-6. We disagree.

When evaluating the sufficiency of the evidence as a matter of federal due process under the Fourteenth Amendment to the United States Constitution, the proper standard of review is whether a

---

[5] Throughout her testimony, Tyeesha referred to the victim interchangeably as "Prick" or Cornelius Miller.

7

rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). Further, under Georgia statutory law, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. However, if there is any direct evidence presented by the State, the circumstantial evidence statute does not apply in a sufficiency analysis. See *Jackson v. State*, 310 Ga. 224, 228 (2) (b) (850 SE2d 131) (2020).

Here, the State did not rely solely on circumstantial evidence. Appellant fails to account for the direct evidence in the form of Ballard's testimony saying that Appellant confessed on multiple occasions to shooting Miller in response to being embarrassed. See *Eggleston v. State*, 309 Ga. 888, 891 (848 SE2d 853) (2020) (appellant's confession to former cellmate was direct evidence of guilt). Additionally, as discussed in Division 3 below, the testimony from the Gray sisters that they told police officers that they saw

8

Appellant shoot Miller was not based on hearsay but also direct evidence of Appellant's guilt.

This direct evidence must be considered along with the circumstantial evidence, including Scott's testimony about seeing Appellant with a gun shortly before and after hearing gunshots at the Blue Club; Detective Busbin's testimony about how Keefe heard about Ballard's plans to get a change of clothes for Appellant and take him somewhere to hide; and Ballard's testimony that Appellant confessed to disposing of his gun after the shooting so that it "would never be found" and that he sought to obtain money from friends in order to "get a bus and get out of town." Taken together in the light most favorable to the verdicts, we conclude that the evidence was more than sufficient to support Appellant's convictions. See *Jackson*, 443 U. S. at 319 (III) (B). This enumeration fails.

2. Appellant next contends that the trial court abused its discretion in allowing the State to treat Tyeesha as a hostile witness. We disagree.

Under OCGA § 24-6-611 (c), "[l]eading questions shall not be

used on the direct examination of a witness except as may be necessary to develop the witness's testimony." However, "[w]hen a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." Id. We review the trial court's decision to allow leading questions for an abuse of discretion. See *Merritt v. State*, 310 Ga. 433, 439 (3) (851 SE2d 555) (2020).

During the State's direct examination of Tyeesha, the prosecutor asked several questions about what she saw on the night of the shooting. Tyeesha testified that she was present at the Blue Club, saw Miller get shot, spoke to police officers about the shooting, and told police officers that she knew who shot Miller. However, Tyeesha also responded "I don't know" to several questions, and the following colloquy occurred regarding the specific identity of the shooter:

> PROSECUTOR: Did you see who shot [Miller]?
> TYEESHA: I seen him get shot.
> PROSECUTOR: Who was the individual that shot him?
> TYEESHA: I don't know.
> PROSECUTOR: Do you remember telling the officers that

10

you knew who shot him?
TYEESHA: Yep.
PROSECUTOR: And who did you tell them shot Cornelius Miller that night?
TYEESHA: What I heard was hearsay.
PROSECUTOR: Do you remember telling the officer that night —
TYEESHA: Yes.
PROSECUTOR: — that you physically saw an individual shoot Cornelius Miller?
TYEESHA: What I heard was hearsay.
PROSECUTOR: Do you remember telling the officer —
TYEESHA: Yes.
PROSECUTOR: — that you physically with your own eyes saw someone shoot Cornelius Miller?
TYEESHA: Yes.

The prosecutor then moved to treat Tyeesha as a hostile witness. Appellant's counsel objected, arguing that Tyeesha was testifying as to what she recalled. The prosecutor responded that Tyeesha was "clearly nonresponsive. She's only answering part of the question. She's answering that she knows and then she says she doesn't know, so I'd ask at this time to be able to lead her." The trial court granted the motion. Prompted by leading questions, Tyeesha then admitted that when she spoke with the police, she admitted that she saw Appellant shoot Miller; that after he was hit, Miller

11

screamed "I've been hit"; and that after Appellant shot Miller, Appellant fired several shots in the air. She also told the police that her sister Nyeesha was behind her during the shooting.

Citing *Hayes v. State*, 268 Ga. 809, 812-813 (6) (493 SE2d 169) (1997), Appellant argues that "the only time a witness may be asked leading questions is when that witness is nervous, reluctant, or hostile," and argues that Tyeesha was none of these things when the prosecutor moved to treat her as a hostile witness.[6] Appellant further argues that the prosecutor's proffered reason for treating Tyeesha as a hostile witness — her unresponsiveness — is not a permitted situation for such treatment. However, the trial court ruled that Tyeesha was a hostile witness when it allowed the prosecutor to use leading questions.

Based on our review of the record, the trial court's ruling was

___

[6] We note that Appellant's reliance on *Hayes* is misplaced, as that case was decided under Georgia's old Evidence Code. The current version of OCGA § 24-6-611 (c) is modeled on Federal Rule of Evidence 611 (c). Accordingly, we look to federal case law interpreting Federal Rule of Evidence 611 (c) for guidance in interpreting this rule. See *State v. Almanza*, 304 Ga. 553, 556-557 (2) (820 SE2d 1) (2018).

not an abuse of discretion. The record indicates that Tyeesha was uncooperative in answering the State's questions regarding her account of the shooting that she had previously provided to Detective Busbin, answering "I don't know" to several questions and "What I heard was hearsay" to two questions about the shooter's identity. Further, her assertions that her previous account was based on hearsay amounted to a recanting of her previous statement to the police that she saw Appellant shoot Miller and an unwillingness to be forthcoming in her testimony. Appellant has not cited any authority indicating that leading questions are not allowed when a witness is unresponsive in this way. And federal cases applying Federal Rule of Evidence 611 (c) indicate that leading questions are appropriate in situations similar to this one. See *United States v. Postell*, 891 F2d 287 (4th Cir. 1989) (leading questions were permitted to develop witness's testimony where the witness was disinclined to "answer fully the prosecution's questions"); *United States v. Brown*, 603 F2d 1022, 1025-1026 (3) (1st Cir. 1979) (leading questions permitted where, among other

13

things, the witness's testimony was "replete with lapses of memory"). Accordingly, we conclude that the trial court did not abuse its discretion in allowing the State to treat Tyeesha as a hostile witness. This enumeration of error fails.

3. During their testimony, both Gray sisters claimed that their knowledge of the shooting was based on hearsay. It follows, Appellant argues, that neither sister had personal knowledge of the shooting and therefore should not have been allowed to testify. This enumeration of error also fails.

As a preliminary matter, Appellant did not object to either sister's testimony on this ground so as to preserve ordinary appellate review of this issue. Accordingly, we review Appellant's claim regarding the Gray sisters' alleged lack of personal knowledge only for plain error. See *Rawls v. State*, 310 Ga. 209, 213 (3) (850 SE2d 90) (2020) (applying plain-error standard where appellant objected to testimony at trial only on grounds other than those raised on appeal); OCGA § 24-1-103 (d).

To establish plain error, Appellant must show a clear or

14

obvious error that he did not affirmatively waive and that affected his substantial rights, meaning that it probably affected the outcome of the trial. If those three requirements are met, we may remedy the error if it seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Rawls*, 310 Ga. at 213 (3) (citations and punctuation omitted).

Regarding a witness's personal knowledge of a matter, OCGA § 24-6-602 is controlling: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of such matter. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony."

Both Gray sisters testified that they were present at the Blue Club on the night of the shooting. Each sister also gave statements to the police recounting the events of the shooting shortly thereafter. Tyeesha spoke to Detective Busbin at the scene immediately after the shooting, and both sisters spoke to Detective Busbin at the police station later in the morning; there, they both told the police that they saw Appellant shoot Miller. Additionally, during trial, both

15

sisters ultimately testified that they told the police that they saw Appellant shoot Miller. Thus, there was sufficient evidence to establish that the Gray sisters each had personal knowledge of the shooting as well as the identity of the shooter. Accordingly, the trial court's decision to allow the Gray sisters to testify was not error, let alone plain error. This enumeration fails.

*Judgment affirmed. All the Justices concur.*

Decided June 30, 2022.

Murder. Berrien Superior Court. Before Judge Tomlinson.

*Mickey Johnson*, for appellant.

*Chase L. Studstill, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.

16