**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 14, 2025**

# In the Court of Appeals of Georgia

A25A0818. MACKEY v. THE STATE.

PIPKIN, Judge.

Appellant Michael Bernard Mackey was convicted of two counts of armed robbery, see OCGA § 16-8-41; two counts of aggravated assault, see OCGA § 16-5-21 (a); and three counts of false imprisonment, see OCGA § 16-5-41. Appellant now challenges his convictions on appeal, asserting that the jury's verdicts were against the weight of the evidence and that the trial court erred in denying his motion for a directed verdict. For the reasons that follow, we affirm.

When viewed in a light most favorable to the verdicts, see *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979), the evidence adduced at trial established as follows. In July 2019, two men wearing wigs, sunglasses, and concealing clothing -- one wearing coveralls and the other wearing a hoodie -- entered

the Cash America Pawn Shop in Cobb County. While one man went to the side of the store to begin stealing jewelry from the display cases, the second man -- armed with what appeared to be a large, silver-colored handgun -- went to the register. The man with the gun pointed the weapon at three employees, first warning them not to do or touch anything and then ushering them into a utility closet; the employees were warned not to leave the closet. Approximately 79 items were stolen during the robbery -- primarily jewelry -- and the incident was captured by surveillance cameras; the video footage was played for the jury.

A citizen was driving in the vicinity at the time of the incident -- on his way to get mango-lime cheesecake -- when he observed two individuals run out of the pawn shop. According to the witness, he observed a man wearing a hoodie and a man wearing a white coverall -- who was also carrying a firearm -- get into a Crown Victoria car with "taxicab signs." The witness followed the vehicle for an indeterminate amount of time before reconsidering his pursuit; he eventually spotted law enforcement and provided details concerning the fleeing vehicle. Law enforcement located the white Crown Victoria -- observing two occupants in the vehicle -- and attempted to initiate a stop, but the Crown Victoria fled and led officers on a high-speed chase. The chase ended after law enforcement struck the fleeing Crown Victoria

with their vehicles; though the passenger fled from the scene, the driver was arrested and later identified as Appellant. A K-9 officer and his handler searched the area in an effort to find the fleeing passenger, and, during that search, the K-9 officer led his handler to a grey and black bag filled with items taken in the robbery.

A search of the vehicle revealed, among other things, torn white paper coveralls; wigs; gloves; a large, silver pellet revolver; and mail and a debit card bearing Appellant's name. Photos of the vehicle presented at trial show that the wrecked getaway vehicle had vestiges of taxicab signage. The jury also viewed numerous videos taken from law enforcement dash and body cameras that captured footage during and after the high-speed chase.

Finally, the jury also received testimony from Nicholas Swaby, who, before trial, pleaded guilty to participating in the robbery. Swaby testified that, in the months leading up to the incident, Appellant was his drug dealer and that the two men, among others, "needed some money." Swaby told the jury that Appellant came up with the idea of robbing the pawn store and that the pair exchanged text messages about the idea; those texts were presented at trial. According to Swaby, Appellant picked him up that day in the white Crown Victoria, and the two men dressed in disguise as construction workers; Swaby had a hammer and a bag, while Appellant was armed with

3

a pellet gun. Once inside the store, Swaby used the hammer to break open the display cases and grab jewelry, while Appellant -- armed with the pellet gun -- forced the employees into "a back room." Swaby also described the high-speed chase and resulting collision with police vehicles.

1. In his first enumeration of error, Appellant asserts that "[t]he weight of the evidence is legally insufficient to sustain [his] conviction for armed robbery, aggravated assault, and false imprisonment" because, he says, "the evidence against [him] did not sufficiently identify [him] as the perpetrator of the crimes charged . . . to prove his guilt beyond a reasonable doubt." To the extent that Appellant is asserting that the verdict is against the weight of the evidence, "the power to grant a new trial on the general grounds lies with the trial court alone," and appellate courts do not have the discretion to grant a new trial on these grounds. (Citation and punctuation omitted.) *Lewis v. State*, 351 Ga. App. 603, 604 (2) (831 SE2d 837) (2019). Instead, "our review is limited to the legal sufficiency of the evidence." (Citation and punctuation omitted.) Id.

To the extent that Appellant is actually challenging the sufficiency of the evidence, the evidence presented at trial -- as detailed above -- was plainly sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See, e.g., *Odle v. State*, 331 Ga. App. 146, 146-150

(1) (770 SE2d 256) (2015) (testimony of accomplice, robbery victims, as well as evidence discovered following a high-speed chase resulting in defendant's arrest was sufficient to sustain convictions for, among other things, armed robbery, aggravated assault, and false imprisonment). See also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.") (citation and punctuation omitted).

2. In his second enumeration of error, Appellant raises a number of unrelated arguments, all of which lack merit. He first asserts that the trial court erred in denying his motion for a directed verdict. "In a criminal case, alleging error based upon a trial court's failure to grant a directed verdict of acquittal is tantamount to challenging the sufficiency of the evidence." *White v. State*, 238 Ga. App. 367, 367 (1) (519 SE2d 13) (1999). As discussed above, the evidence was sufficient to authorize the jury's verdicts and, consequently, this argument is without merit. Id.

Appellant next asserts that he was improperly convicted on the uncorroborated testimony of an accomplice and that the trial court erred in failing to instruct the jury on evaluating accomplice testimony. However, any possible error does not amount to reversible error. Swaby's testimony was plainly corroborated -- and Appellant's

involvement in the robbery was independently established -- by Appellant's own text messages, as well as the evidence seized in his vehicle immediately following the robbery. Accordingly, Appellant is not entitled to relief on this ground.[1] See, e.g., *Williams v. State*, 315 Ga. 490, 497 (3) (883 SE2d 733) (2023). Finally, there is no merit to Appellant's apparent position that he was improperly convicted using circumstantial evidence. Here, the State presented direct evidence of Appellant's involvement in the crime, and "if there is any direct evidence presented by the State, the circumstantial evidence statute does not apply in a sufficiency analysis." *Brown v. State*, 314 Ga. 193, 196 (1) (875 SE2d 784) (2022).

For these reasons, Appellant's convictions are affirmed.

*Judgment affirmed. McFadden, P. J., and Hodges, J., concur.*

---

[1] Our holding also applies to Appellant's contention -- made in passing -- that the trial court committed plain error in failing to charge the jury on accomplice corroboration. See *Hamm v. State*, 294 Ga. 791, 797-798 (2) (756 SE2d 507) (2014).